UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARA CONNELLY and RICHARD BRYAN WILSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

CASE NO.: 5:26-cv-00539-JSS-PRL

vs.

LGI HOMES, INC., LOANDEPOT, INC., and LGI MORTGAGE SOLUTIONS, LLC,

Defendants.

_____________________________________/

**DEFENDANT LGI HOMES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, *OR ALTERNATIVELY* DISMISS ALL CLAIMS**

Defendant, LGI Homes, Inc. ("LGI Homes"), hereby moves this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA") and Fed. R. Civ. P. 12(b)(6), for an order (i) compelling Plaintiffs Mara Connelly ("Connelly") and Richard Wilson ("Wilson") to arbitrate their claims asserted against LGI Homes in the present case pursuant to a valid arbitration agreement between the parties and staying the action pending the resolution of such arbitration, or, *alternatively* (ii) dismissing any claims not subject to arbitration for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## I. Complaint Allegations and Purchase Agreement Central to All Claims

The allegations in the Complaint asserted by each Plaintiff arise out of each Plaintiff's purchase of a home in Florida from LGI Homes. *See* Compl. (Dkt. 1), ¶¶ 1, 6, 13, 16, 123. The gravamen of Plaintiffs' allegations is that each Plaintiff believes the marketing materials and information provided by LGI Homes were different from the final details concerning monthly payments and expenses associated with the purchase of the home. *See, e.g., id.* at ¶¶ 1, 7, 13, 48, 123, 143-44. Plaintiffs admit they each signed home purchase agreements with LGI Homes governing the purchase of their homes. *See id.* at ¶¶ 16, 63, 123-24, 126, 139, 152. Plaintiffs acknowledge that the purchase agreements contain an arbitration provision. *Id.* at ¶ 126.

The Wilson and Connelly Purchase Agreements are attached hereto as **Exhibits <u>1</u>** (Wilson) and **<u>3</u>** (Connelly). *See* Declaration of Destiny D'Errico ("LGI Decl.") ¶¶ 3-

4 & Exs. 1, 3 thereto. Although Plaintiffs did not attach the Purchase Agreements to the Complaint, they are central to each Plaintiff's claims and are appropriately considered by this Court both on a motion to dismiss as well as a motion to compel arbitration. *See Day v. Tay*lor, 400 F.3d 1272, 1276 (11th Cir. 2005) (approving consideration of contract attached to motion to dismiss); *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334 (11th Cir. 2010) (same); *Orellana v. Roblox Corp.*, 769 F.Supp.3d 1273, 1282-86 (M.D. Fla. 2025) (Sneed, J.) (applying summary judgment standard to motion to compel arbitration and considering arbitration provisions in online User Agreements presented by defendants but not attached to complaint). The very first statement in the Purchase Agreement alerts the buyer that all disputes will be decided by alternative dispute resolution:

LGI HOMES

LGI HOMES - FLORIDA, LLC
PURCHASE AGREEMENT for TRILBY CROSSING

THIS DOCUMENT CREATES IMPORTANT LEGAL OBLIGATIONS THAT YOU SHOULD UNDERSTAND PRIOR TO SIGNING, INCLUDING A REQUIREMENT THAT ANY DISPUTES BE DECIDED BY ALTERNATIVE DISPUTE RESOLUTION. YOU SHOULD READ IT THOROUGHLY AND IF YOU ARE UNCERTAIN OR HAVE QUESTIONS ABOUT YOUR RIGHTS, OBLIGATIONS OR RESPONSIBILITIES UNDER THIS AGREEMENT, CONSULT AN ATTORNEY.

The alternative dispute resolution provision is detailed, is nearly identical as to each Plaintiff, and provides in pertinent part:

**21. DISPUTE RESOLUTION - NON-BINDING MEDIATION AND BINDING ARBITRATION**

**Any and all claims, disputes and controversies by or between Buyer and Seller, whether in contract, equity or tort, arising out of, or in any way related to the purchase of the Property, the construction related to the Property, or otherwise related to Buyer's dealings or relationships with Seller (a *"Dispute")* shall be resolved solely by the dispute resolution process identified in this Section. Buyer**

> **acknowledges that agreeing[1] to this dispute resolution process means Buyer is waiving the right to trial by judge and/or jury.**
>
> **Any proceeding involving a Dispute will be brought, conducted, and decided only in the county and state where the Property is located.**

LGI Decl. Exs. 1 & 3 at § 21 (bolding, italics and enlarged font in original). The arbitration provision is stated in § 21(C), with slight differences between the two documents in the first paragraph. The Wilson provision provides:

> **C. Arbitration. Binding arbitration shall be conducted by the AAA or DeMars & Associates, Ltd. ("DeMars") pursuant to applicable rules except as modified herein. The choice of arbitration service shall be made by Seller after its receipt of written notice of a Dispute. All administrative fees of the arbitration service and arbitrator's fees shall be shared equally by Buyer and Seller. All attorney's fees and expenses, and consultant and expert fees and expenses shall be paid by the incurring party. Except as otherwise specifically provided herein the arbitrator shall have no authority to award fees or costs of one party to the other, including administrative fees of the arbitration service, arbitrator's fees, attorney's fees and expenses, and consultant and expert fees and expenses. …**

LGI Decl. Ex. 1 at § 21(C). The Connelly provision provides:

> **C. Arbitration. Binding arbitration shall be conducted by the AAA, Judicial Arbitration & Mediation Services ("JAMS") or DeMars & Associates, Ltd. ("DeMars") pursuant to applicable rules except as modified herein. The choice of arbitration service shall be made by Seller after its receipt of written notice of a Dispute. All administrative fees of the arbitration service and arbitrator's fees shall be shared equally by Buyer and Seller. All attorney's fees and expenses, and consultant and expert fees and expenses shall be paid by the incurring party. The arbitrator must follow the applicable State's substantive law, except to the extent explicitly modified herein. Notwithstanding the preceding sentence, and except as otherwise specifically provided herein with regards to actions to compel mediation or arbitration, the arbitrator shall have no authority to, and shall not, award fees or costs of one party to the other, including administrative fees of the arbitration service, arbitrator's fees, attorney's fees and expenses, and consultant and expert fees and expenses. Both Buyer and Seller waive any right to recover any such fees or expenses from the other in any legal proceeding even if otherwise allowed by statute, CC&Rs, or otherwise. …**

---

[1] The Connelly provision states: "...acknowledges and agrees that ...". *See* LGI Decl. Ex. 3 at § 21.

LGI Decl. Ex. 3 at § 21(C). The remaining text is the same for both Wilson and Connelly:

> **Notwithstanding any other provision herein, if either Buyer or Seller brings any successful court action to compel … arbitration under this Agreement, then the party compelling … arbitration shall be entitled to recover from the other party its reasonable attorney's fees and costs incurred in that court action. …**
>
> **The parties agree that this Agreement and this arbitration provision involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule. <u>Any and all issues relating to the arbitrability of the Dispute shall be decided by the arbitrator</u>.**
>
> **Buyer waives the right to institute or participate in a class action arbitration or litigation for any Dispute or other matter covered by this Agreement. Buyer shall not consolidate or join any Dispute covered by this Agreement with any dispute or claim of any other current or former owner of property in the subdivision in arbitration, litigation, or other proceeding. The arbitration shall solely include and involve Buyer and Seller to this Agreement …. Buyer and Seller hereby agree and acknowledge that this arbitration provision is intended to benefit and be binding on any occupant or subsequent purchaser of the Property.**
>
> **… The arbitrator is required to apply the applicable state's law and shall have no authority to award any damage to a party unless such damages are specifically provided for by state or Federal law.**
>
> **…**
>
> **Buyer and Seller agree that notwithstanding anything to the contrary, the rights and obligations set forth in this dispute resolution provision shall survive (1) the termination of this Agreement by either party; (2) the default of this Agreement by either party; or (3) any Closing and delivery of deed. The waiver or invalidity of any portion of this dispute resolution provision shall not affect the validity or enforceability of the remaining portions of this dispute resolution provision and/or the Agreement. Buyer and Seller further agree (1) that any dispute involving Seller's directors, officers, partners, employees, affiliates and agents shall be resolved as set forth herein and not in a court of law or equity; and (2) that Seller shall have the option to include its subcontractors, suppliers, and vendors as parties in the alternative dispute resolution procedures set forth in this Agreement. Buyer's acceptance of these dispute resolution procedures is a material part of Seller's decision to sell the Property to Buyer at the Purchase Agreement.**

LGI Decl. Exs. 1 & 3 at § 21(C) (underlining added for emphasis).

The Complaint is replete with conclusory allegations derived from a hit piece article by Hunterbrook Media disguised as journalism and designed to solicit disgruntled homebuyers to initiate or participate in litigation against LGI, rather than actual facts personally known by either of the named Plaintiffs. *See, e.g.*, Compl. ¶¶ 2-3, 42, 50-53, 55-57, 61-62, 102, 105, 107. This type of digital astroturfing is becoming an increasingly prevalent tactic by entities like Hunterbrook Media and its affiliates, Hunterbrook Equity and Hunterbrook Law. *See* Bárbara de Rosa Lazarotto, *The Grass is not Always Greener on the other Side: The Use of Digital Astroturfing to Spread Disinformation and the Erosion of the Rule of Law*, 3 LSU Law J. Soc. Just. & Pol'y, 113 (2023) available at: https://digitalcommons.law.lsu.edu/jsjp/vol3/iss1/9/. Several allegations purport to quote or paraphrase from an LGI Homes sales manual but fail to attach the purported manual. Notably, LGI Homes' sales manuals are confidential and proprietary business documents, not available for public dissemination, which are updated periodically. It does not appear that any of Plaintiffs' purported quotations come from an LGI Homes sales manual [applicable] to either Plaintiff's purchases in November 2023 (Wilson) or July 2024 (Connelly).

The Complaint asserts four causes of action: (1) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") violation by both Plaintiffs against all Defendants; (2) Fraud by both Plaintiffs against all Defendants; (3) Negligent Misrepresentation by both Plaintiffs against all Defendants; and (4) Violation of the Truth in Lending Act ("TILA") by both Plaintiffs against LGI Homes. Because each of Plaintiffs' claims arise out of his/her purchase agreements and dealings with LGI Homes, the claims

must be arbitrated pursuant to the clear terms of the arbitration clause in the Purchase Agreements. Accordingly, LGI Homes requests the Court enter an order compelling arbitration and staying the proceedings. Alternatively, if the Court decline to compel arbitration, it should dismiss each of the claims as against LGI Homes for failure to state a claim under applicable law.

## II. Legal Standards

### A. <u>Federal Arbitration Act ("FAA")</u>

The FAA "reflects a 'liberal federal policy favoring arbitration.'" *Pendergast v. Sprint Nextel Corp*., 691 F.3d 1224, 1231 (11th Cir. 2012) (quoting *A T & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (additional citations omitted)). "Section 2 of the FAA requires the courts to enforce an arbitration provision within a contract unless 'such grounds exist at law or in equity for the revocation of any contract.'" *Parnell*, 804 F.3d at 1146 (quoting 9 U.S.C. § 2); *Pendergrast*, 691 F.3d at 1231 n.7.

The FAA expressly provides that a party seeking to compel arbitration may seek to "stay ... the action until such arbitration has been had in accordance with the terms of the agreement," and requires that, if the Court determines arbitration is appropriate, it "shall" stay the action as requested. 9 U.S.C. § 3. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration,

§ 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

### B. <u>Rule 12(b)(6) Standard</u>

Under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must assume the complaint's factual allegations are true for purposes of the motion, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Nor will "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III. Plaintiffs' Claims Against LGI Homes Are Subject to Arbitration

The FAA states that a clause in any contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" will be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. "When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration." *Parnell*, 804 F.3d at 1147 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, (1995)); *see also Orellana*, 769 F.Supp.3d at 1280-81. The Purchase Agreements are "governed by the

laws of the State of Florida," and the arbitration provisions are governed by the FAA. Exs. 1 & 3, at § 21(C), § 27.

**A. A Valid Arbitration Agreement Exists**

Under Florida law, the elements of a valid contract are: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)); *Orellana*, 769 F.Supp.3d at 1281 (citing same). Both Connelly and Wilson entered into a Purchase Agreement, as acknowledged in the Complaint. *See* Compl. ¶¶ 16, 63, 123-24, 126, 139, 152. Each Purchase Agreement includes all the requisites of a valid contract and is signed by each respective Plaintiff. *See* LGI Decl. ¶¶ 3-4 & Exs. 1, 3. Because the Purchase Agreements established and facilitated the closing of each Plaintiff's home purchase, and since Plaintiffs' entire action concerns their dissatisfaction with costs and payments incurred following the purchase of their homes, there can be no dispute that the Purchase Agreements were indeed entered into and facilitated Plaintiffs' purchases of their homes.

Plaintiffs acknowledge that the Purchase Agreements contain an arbitration provision. *Id.* at ¶ 126. Plaintiffs' contention in paragraphs 127-128 of the Complaint that the arbitration provisions are not enforceable largely conflates their claims against the mortgage lender with their claims against LGI Homes. LGI Homes and the lenders are separate entities and, according to the allegations in the Complaint, Plaintiffs entered into independent written agreements with the separate entities.

### B. The Arbitration Provision Contains a Delegation Provision

"'[W]here an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision.' … 'Absent such a challenge,' courts must 'treat a delegation provision as valid and permit the parties to proceed to arbitration.'" *Orellana*, 769 F.Supp.3d at 1288 (quoting *Parnell*, 804 F.3d at 1144). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1266 (2022) (discussing and following *Henry Shein*).

The arbitration provision in each Purchase Agreement includes such a delegation provision: "**Any and all issues relating to the arbitrability of the Dispute shall be decided by the arbitrator.**" Exs. 1 & 3 at § 21(C) (bolded in original). Because the arbitration provision in each Purchase Agreement requires arbitration of any and all disputes arising from or relating to the interaction between each Plaintiff and LGI Homes, the delegation provision "clearly and unmistakably evince the parties' intent to arbitrate all gateway issues" including Plaintiffs' enforceability and scope arguments. *Orellana*, 769 F.Supp.3d at 1290 (citing *Attix*, 35 F. 4th at 1297).

## C. Plaintiffs' Claims Must be Arbitrated[2]

Each of the causes of action against LGI Homes must be arbitrated because they arise out of and relate solely to Plaintiffs' purchase of their homes or Plaintiff's dealings with LGI Homes. *See* Exs. 1 & 3 at § 21 ("**Any and all** claims, disputes and controversies by or between Buyer and Seller, whether in contract, equity or tort, arising out of, or **in any way related to the purchase of the Property**, ... or **otherwise related to Buyer's dealings or relationships with Seller** (a "*Dispute*") shall be resolved solely by the dispute resolution process." (underlined emphasis supplied)). Under Florida law, this type of arbitration clause is deemed to be broad in scope and reaches any and all claims relating to the parties and is fully enforceable. *See Jackson v. Shakespeare Found., Inc.*, 108 So.3d 587, 593 (Fla. 2013) (citing *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 637-38 (Fla. 1999)); *see also Kaiser v. Alexander Marine USA*, No. 6:23-cv-108-RBD-RMN, 2023 WL 6494779, at *3 (M.D. Fla. Aug. 18. 2023) (citing *Seifert* and *Jackson* and holding scope of provision broad).

Each Plaintiff's purchase of his/her home was a transaction. Plaintiff Wilson signed his Purchase Agreement on November 17, 2023, and completed his home purchase, signing the closing documents, on December 11, 2023. *See* LGI Decl. ¶ 3 & Exs. 1-2. Plaintiff Connelly signed her Purchase Agreement on July 14, 2024, and

---

[2] Because of the delegation clause, the determination of what claims are or are not subject to arbitration should be left to the arbitrator. This argument is provided in the event that the Court believes this analysis must be conducted by the Court in the first instance.

completed her home purchase, signing the closing documents, on September 16, 2024. *See* LGI Decl. ¶ 4 & Exs. 3-4.

Plaintiffs' claims center around their complaints that they entered into the purchase agreements and ultimately purchased their homes in reliance upon alleged misrepresentations in the marketing and sales process by LGI Homes. *See* Compl. ¶¶ 183-188. Specifically, the FDUTPA claim is based on allegations that "Defendants" engaged in "high-pressure sales tactics, ... and misrepresented the true monthly cost of homeownership" which induced Plaintiffs to proceed with purchase; the fraud claim is based on Plaintiffs being induced to enter into purchase based on alleged misrepresentations in advertisements regarding "cost of home"; the misrepresentation claim is based on representation of price and Plaintiffs' reliance thereon, and the TILA claim relies upon the same allegations as the three preceding claims. *See id.* ¶¶ 191, 197, 199-200, 202. Thus, similar to the plaintiff's claims in *Kaiser*, each of these claims is "based on allegations that [plaintiff] relied on misrepresentations in executing the purchase agreement." *Kaiser*, 2023 WL 6494779, at *3 (holding plaintiff's negligent misrepresentation, fraudulent inducement, and FDUPTA claims all within the scope of the arbitration clause); *see also Jackson*, 108 So.3d at 594 (holding plaintiff's fraud claim within the scope of arbitration clause because it was "inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself").

Furthermore, there is no impediment to enforcing arbitration provisions when the plaintiffs assert FDUTPA, fraud, or misrepresentation claims. *See Pendergast*, 691

F.3d at 1231-36 (discussing *Concepcion*, 563 U.S. 333 (2011), and *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011) at length and holding Pendergast's FDUTPA and misrepresentation claims must be arbitrated and class action waiver enforced pursuant to the plain language of the governing agreement); *Kaiser*, 2023 WL 6494779, at *3 (ordering negligent misrepresentation, fraudulent inducement, and FDUPTA claims to arbitration); *Mutschler v. Used Auto Outlet Inc.*, No. 8:25-cv-2243-SDM-SPF, 2025 WL 4087704, at *6 (M.D. Fla. Jan.7, 2025) (finding plaintiff's claims, including fraud, FDUTPA, TILA, to be within the scope of the arbitration provision), *adopted* 2026 WL 228010 (M.D. Fla. Jan. 28, 2026).

Moreover, Plaintiffs cannot circumvent the arbitration provision found within their Purchase Agreements by asserting a TILA claim. Plaintiffs acknowledge that they obtained their mortgage loans from loanDepot, not LGI Homes. *See* Compl. ¶¶ 139–42, 152–54. And TILA does not extend to purchase agreements between a homebuilder and homebuyer. *See CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1208–11 (D.N.M. 2020) ("[TILA] only prohibits arbitration provisions in residential mortgage loans."). Finally, Because of the delegation clause, the determination of whether the TILA claim is or is not subject to arbitration should be left to the arbitrator.

**D. Provision is Not Unconscionable**

Plaintiffs' conclusory allegation that the delegation provision within the arbitration provision is unconscionable is without merit. The burden is on the party resisting arbitration to prove unconscionability and that the claims at issue are

unsuitable for arbitration. *Speidel v. Am. Honda Fin. Corp.*, No: 2:14-cv-19-FtM-38CM, 2014 WL 12873367, at *1 (M.D. Fla. April 21, 2014) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000) (additional citations omitted)); *Hobby Lobby Stores, Inc. v. Cole*, 287 So.3d 1272, 1275 (Fla. 5th DCA 2020). Under Florida law, "[a] contract must be both procedurally and substantively unconscionable for a court to find it unenforceable." *Mutschler v. Used Auto Outlet Inc.*, No. 8:25-cv-2243-SDM-SPF, 2025 WL 4087704, at *4 (M.D. Fla. Jan. 7, 2025) (citing *Basulto v. Hialeah Auto.*, 141 So.3d 1145, 1158-59 (Fla. 1999); *Hobby Lobby*, 287 So.3d at 1275 (citing *Basulto*); *Golden v. Mobil Oil Corp.*, 882 F.2d 490 (11th Cir. 1989) (citing cases).

Procedural unconscionability is "the absence of meaningful choice when entering into the contract ...., which relates to the manner in which the contract was entered." *Basulto*, 141 So.3d at 1157. To determine whether an arbitration agreement is procedurally unconscionable under Florida law, courts consider: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Pendergast*, 592 F.3d at 1135 (citing *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999), and *Murphy v. Courtesy Ford, LLC*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006)). Substantive unconscionability focuses on the agreement itself and whether the terms are unreasonable. *Basulto*, 141 So.3d at 1157.

"Florida courts apply the doctrine of unconscionability 'with great caution' [and] have warned that the doctrine is not a mechanism that allows a party to 'avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous.''" *Lambert v. Signature Healthcare, LLC*, No. 19-11900, 2022 WL 2571959, at *4 (11th Cir. July 8, 2022) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 284, 288 (Fla. 1st DCA 2003), and citing *Spring Lake NC, LLC v. Beloff*, 110 So.3d 52, 55 (Fla. 2d DCA 2013); *Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006)).

Plaintiffs' complaint that the delegation provision is "buried in adhesive form contracts" and presented to unsophisticated first-time homebuyers are the type of conclusory allegations that have been rejected by many courts. *See* Compl. ¶ 129. "The fact that an arbitration agreement is presented on a take-it-or-leave-it basis (a contract of adhesion) is not dispositive." *Lambert*, 2022 WL 2571959, at *5 (citing *Hobby Lobby*, 287 So.3d at 1275); *Reimer v. AT&T Mobility, LLC*, No: 6:24-cv-1883-WWB-LHP, 2025 WL 4738543, at *7 (M.D. Fla. June 12, 2025) (holding arbitration provision not unconscionable, citing *Lambert*, 2022 WL 2571959, at *5 and other cases); *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So.2d 34, 40 (Fla. 4th DCA 2005) (enforcing arbitration provision and holding contract neither procedurally or substantively unconscionable). Plaintiffs have not alleged that they were unable to read the document, or that they asked questions about the arbitration provision and were not answered, nor have Plaintiffs alleged that they were forced to purchase a home from

LGI Homes. While LGI Homes provides high quality, desirable homes, the reality is that there are many homes available for purchase in Florida; Plaintiffs *chose* to purchase homes from LGI Homes. *See VoiceStream Wireless Corp.*, 912 So.2d at 40 (explaining that even if a plaintiff cannot obtain the exact same product from another seller, the fact that available choices exist negate a finding of procedural unconscionability). As the district court in *Mutschler* explained:

> Plaintiff suggests she could not negotiate the Contract's terms and had no choice but to accept the Contract and be bound by it or forego her purchase of the BMW. However, nothing supports this. The Contract is well organized with clearly labeled sections and subsections for different topics. Plaintiff offers no evidence that she struggled to understand what she signed. And she could have walked away from the deal and attempted to purchase a car from a dealer that did not require its customers to submit claims to arbitration. In other words, there is no evidence that Plaintiff lacked a meaningful choice; the Court declines to find procedural unconscionability.

*Mutschler*, 2025 WL 4087704, at *4.

The Purchase Agreements expressly and repeatedly advised Plaintiffs—in enlarged, bolded font—that the alternative dispute resolution provision was an essential part of the contract to purchase from LGI Homes. This is stated at the top of the first page, at § 21 and again at the end at § 29. *See* LGI Decl. Exs. 1 & 3; *see supra* at p. 2; *see infra* at p. 30. Plaintiffs are unable to show that the arbitration provisions are procedurally or substantively unconscionable.

**E. <u>Case Should be Stayed</u>**

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *Orellana*, 769 F.Supp.3d at

1290. This Court explained in *Orellana* that when a case involves "'both arbitrable and nonarbitrable claims ... courts have discretion to stay nonarbitrable claims [and '[c]rucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.'" *Orellana*, 769 F.Supp.3d at 1290 (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004)). With respect to Plaintiffs' claims against LGI Homes must be arbitrated. However, even if only certain claims are arbitrated, then the remainder should be stayed because they rely largely upon the same factual allegations as the other claims being submitted to arbitration. *See Orellana,* 769 F.Supp.3d at 1290-91. Thus, all proceedings with respect to LGI Homes should be stayed until the completion of arbitration.

## IV. ***Alternatively*** **TILA Claim Should be Dismissed for Failure to State a Claim**

As to their fourth cause of action, Plaintiffs fail to plausibly allege that LGI Homes violated TILA on the theories that its salespeople allegedly acted as unlicensed mortgage originators and steered homebuyers to loans with loanDepot and LGI Mortgage.[3] Compl. ¶¶ 203, 207. First, TILA does not apply because LGI Homes is neither a "creditor" nor a "mortgage originator" subject to the statute. Both Plaintiffs acknowledge in the Complaint that loanDepot, not LGI Homes, took their mortgage loan applications. Nowhere does the Complaint allege, beyond conclusory assertions,

[3] Regulation Z, which implements TILA, refers more generally to a "loan originator." 12 C.F.R. § 1026.36(a)(1). For purposes of this Motion to Dismiss, LGI Homes does not distinguish between the definitions of a "mortgage originator" and a "loan originator." Any potential distinction is also irrelevant because Plaintiffs fail to plausibly allege that LGI Homes satisfies either definition.

that LGI Homes ever extended credit or that any financial obligation was initially payable to LGI Homes. Thus, the Complaint does not plausibly allege that LGI Homes was a "creditor" subject to TILA. *See* 15 U.S.C. § 1602(g) (defining "creditor" as a person who both: (1) regularly extends certain consumer credit; and (2) is the person to whom the resulting debt is initially payable).

Plaintiffs also fail to plausibly allege that LGI Homes—as a homebuilder that does not offer financing—employed salespeople who performed mortgage originator activities, let alone mortgage originator activities for compensation. Despite the sweeping nature of the general allegations, the Complaint does not allege that LGI Homes was involved in either of the named Plaintiffs' mortgage origination processes. And because TILA's anti-steering provisions apply only to mortgage originators, Plaintiffs similarly fail to plausibly allege that LGI Homes salespeople illegally steered them to obtain specific loan products for compensation. Simply referring homebuyers to an affiliated mortgage company is not a TILA violation.

### A. <u>Failure to Plausibly Allege Mortgage Originator Activities</u>

None of Plaintiffs' conclusory theories is sufficient to state a TILA claim against LGI Homes because they mischaracterize the definition of a "mortgage originator" under TILA and are not supported by factual allegations specific to the named Plaintiffs. *See* Compl. ¶ 203. TILA defines a "mortgage originator" as "any person who, for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain—(i) takes a residential mortgage loan application; (ii) assists a consumer in obtaining or applying to obtain a residential mortgage loan; or

(iii) offers or negotiates terms of a residential mortgage loan." 15 U.S.C. § 1602(dd)(2)(A). Plaintiffs fail to plausibly allege that LGI Homes salespeople engaged in any of these activities. It follows that LGI Homes is not liable under TILA for employing unlicensed mortgage originators. Plaintiffs also fail to plausibly allege that LGI Homes engaged in any of these mortgage originator activities in exchange for compensation tied to a specific loan product.

Finally, the Complaint is not even clear as to the source of Plaintiffs' TILA claims. Plaintiffs claim violations of various subsections of 15 U.S.C. § 1639b, but none of those subsections itself provides for a private right of action.

**i. <u>LGI Did Not Act for, or in the Expectation of, Compensation or Gain</u>**

As a threshold matter, Plaintiffs fail to plausibly allege that LGI Homes engaged in activity requiring licensure "for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain." 15 U.S.C. § 1602(dd)(2)(A). Regulation Z defines "compensation" to include "salaries, commissions, and any financial or similar incentive." 12 C.F.R. § 1026.36(a)(3). And as instructive here, Regulation H[4] provides that an individual acts "for compensation or gain" if such person "receives or expects to receive in connection with the individual's activities anything of value, including, but not limited to, payment of a salary, bonus, or

[4] Regulation H, in relevant part, implements the Secure and Fair Enforcement of Mortgage Licensing ("SAFE") Act, which sets minimum standards for mortgage originator licensing schemes. Plaintiffs rest their unlicensed mortgage originator activity claim on section 1639b(b)(1), which explicitly refers to the SAFE Act. *See* Compl. ¶ 74 (referencing SAFE Act's licensing requirements). Thus, SAFE Act definitions are instructive as to who constitutes a "mortgage originator" under TILA.

commission." App'x A to 12 C.F.R. Part 1008, § (c)(1). The Complaint conclusorily alleges that "LGI [Homes] performed [mortgage originator] activities for direct or indirect compensation or gain, and in the expectation thereof." Compl. ¶ 205. But beyond this single summary statement, the Complaint does not allege that LGI Homes received, or expected to receive, any form of compensation in connection with taking a residential mortgage loan application from, or offering or negotiating residential mortgage loan terms with, either Plaintiff.

Plaintiffs allege, on information and belief, only that LGI Homes received, or expected to receive, compensation for placing Plaintiffs' loans with loanDepot and LGI Mortgage, including distributions or returns from these entities, referral or marketing services payments, and marked-up fees imposed on homebuyers. *Id.* This allegation (which is supported by mere conclusory statements) is insufficient to plausibly allege receipt or expectation of compensation specifically in exchange for assisting Plaintiffs with their mortgage loan applications through loanDepot. *See DeMarcus v. Univ. of S. Ala.*, 133 F.4th 1305, 1315 (11th Cir. 2025) (holding that "conclusory statements—devoid of any factual support—aren't assumed to be true").

And when pleading an allegation on information and belief, a complaint generally must plead the basis for such information and belief. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (refusing to accept as true as true allegations pleaded "upon information and belief" without enough supporting factual allegations that rendered the allegations pleaded "upon information and belief" plausible). Here, however, Plaintiffs provide no explanation of their basis for believing that LGI Homes

and its salespeople allegedly received any of the forms of compensation listed above in exchange for placement of Plaintiffs' loans. Nor do Plaintiffs otherwise provide any support for this conclusory allegation.

Finally, the allegation that LGI Homes is illegally compensated for referrals to LGI Mortgage through the revenues that it earns as a partner in this joint venture with loanDepot, Compl. 1 ¶ 12, is legally untenable. The Official Commentary to Regulation Z plainly states that, for the purposes of TILA, compensation does not include bona fide returns or dividends paid on stock or other equity holdings. *See* 12 C.F.R. Pt. 1026, Supp. I, Part 3; *see also* 12 U.S.C. §§ 2602(7), 2607(c)(4) (permitting referral of business to an affiliate). Because the Complaint does not plausibly allege that LGI Homes received compensation tied to a specific loan in exchange for mortgage originator activity, the TILA claim fails.

**ii. <u>LGI Homes Did Not Take Residential Mortgage Loan Applications</u>**

Both named Plaintiffs acknowledge that loanDepot—rather than LGI Homes —took their mortgage loan applications. Compl. ¶¶ 141-42, 153-54. And Plaintiffs explicitly allege that they obtained their mortgages from loanDepot, not LGI Homes. *See id.* ¶¶ 139–42, 152–54. On this basis alone Plaintiffs' theory warrants dismissal.

Plaintiffs try to circumvent the applicable legal definition under their general theory that LGI Homes collected residential mortgage loan application information because its salespeople "collected and recorded prospective Homebuyers' loan application information, including income, assets, and other financial information, on

a 'pre-qualification form'" and obtained homebuyers' credit reports. *Id.* ¶ 203(a). This theory is unsupported by Plaintiffs' own allegations and misinterprets TILA.

The Complaint does not allege that any LGI Homes salesperson took the requisite mortgage loan application information from either named Plaintiff. *See id.* ¶¶ 131–57. Instead, each Plaintiff alleges that LGI Homes referred them to loanDepot and that each Plaintiff worked with loanDepot to obtain their mortgages. *See id.* ¶¶ 139–42, 152–54. At most, Plaintiffs plead only that LGI Homes salespeople obtained a credit report on Mr. Wilson, *id.* ¶ 150, which is not a violation of TILA. *See In re Cap. One Bank Credit Card Int. Rate Litig.*, 51 F. Supp. 3d 1316, 1348 (N.D. Ga. 2014), as corrected (Nov. 3, 2014), *aff'd sub nom. Barker v. Cap. One Bank (USA), N.A.*, 622 F. App'x 894 (11th Cir. 2015) (explaining that "[TILA] is a disclosure statute and does not substantively regulate consumer credit [including credit reporting]" (quotations omitted)). They do not allege—beyond bare conclusions[5]—that LGI Homwa obtained any of the mortgage loan application information from the Plaintiffs.

Even the Complaint's general and conclusory allegations are legally flawed. TILA defines a "mortgage originator" as any person who, in relevant part, "takes a residential mortgage loan application." 15 U.S.C. § 1602(dd)(2)(A)(i). But Regulation H provides that, to constitute a mortgage originator, the person must take the

[5] The generalized allegations that LGI Homes salespeople took applications through the pre-qualification forms (Compl. ¶¶ 73–74, 77) are not plausible because they are contradicted by the more specific allegation indicating that the form itself does not include all the required information to constitute an application. *See Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 (11th Cir. 1990) (holding that "allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal").

application *for the purpose of facilitating a decision* whether to extend an offer of residential mortgage loan terms to a borrower." 12 C.F.R. § 1008.103(c)(1) (emphasis added). Here, the Complaint does not allege that LGI Homes took an application for the purpose of deciding whether to extend mortgage loans to Plaintiffs. To the contrary, the Complaint specifically alleges that it was loanDepot that made the decision to extend mortgage loans to Plaintiffs. *Cf. Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1204-05 (N.D. Ala. 2017) ("Defendant cannot be considered a creditor under TILA because it was Countrywide Home Loans, Inc., and not Defendant, to whom the debt arising from the consumer credit transaction [was] initially payable on the face of the ... indebtedness." (alteration in original) (quotations omitted).).

Regardless, the Complaint does not plausibly allege that the "pre-qualification form" allegedly used by LGI Homes included all the information legally necessary to constitute a residential mortgage loan application within the meaning of TILA. Regulation Z defines a "residential mortgage loan application" as consisting of "the submission of the consumer's name, the consumer's income, the consumer's social security number to obtain a credit report, the property address, an estimate of the value of the property, and the mortgage loan amount sought." 12 C.F.R. § 1026.2(a)(3)(ii).

Of these six required elements, the alleged pre-qualification form (Compl. ¶ 72) appears to have requested only three: the consumer's name, income, and social security number. This pre-qualification form did not request the property's address (distinct from the homebuyer's current address), the property's estimated value, or the loan amount sought. Thus, the Complaint fails to plausibly allege that LGI Homes

salespeople's use of the pre-qualification form constituted taking residential mortgage loan applications by unlicensed mortgage originators in violation of TILA.

**iii. <u>LGI Homes Did Not Improperly Assist Plaintiffs in Obtaining or Applying to Obtain Residential Mortgage Loans</u>**

Plaintiffs offer no explanation in their Complaint as to how LGI Homes assisted them in obtaining or applying to obtain a residential mortgage loan. *See* Compl. ¶¶ 131–57. As previously explained, both named Plaintiffs acknowledge that they worked with loanDepot to apply for and obtain their mortgages. Plaintiffs explicitly allege that loanDepot—rather than LGI Homes—took their mortgage loan applications. *Id.* ¶¶ 139-42, 152-54, 203(c).

Generally, there is no prohibition on a homebuilder referring homebuyers to an affiliated mortgage company without receiving compensation specifically for such referral. *See Yeatman v. D.R. Horton, Inc.*, No. 407CV081, 2008 WL 1847087, at *2 (S.D. Ga. Apr. 23, 2008), *aff'd*, 577 F.3d 1329 (11th Cir. 2009) (explaining that a homebuilder may refer a homebuyer to an affiliated mortgage company and may provide incentives in exchange for using such mortgage company). To the contrary, federal law explicitly permits a homebuilder to refer a homebuyer to an affiliated mortgage company. *See Spicer v. Ryland Grp., Inc.*, 523 F. Supp. 2d 1356, 1361 (N.D. Ga. 2007), *aff'd* 294 F. App'x 434 (11th Cir. 2008); 12 U.S.C. § 2607(c)(4). Nor does the Complaint plausibly allege that LGI Homes referred either named Plaintiff to loanDepot (and LGI Mortgage) with the expectation of, or actual receipt of, direct or indirect compensation.

Here, the Complaint includes only summary statements that "LGI [Homes] put Ms. Connelly in contact with LGI Mortgage," Compl. ¶ 152, and "directed Mr. Wilson to loanDepot for financing," *id.* ¶ 139. And as explained earlier, it conclusorily alleges, on information and belief, that LGI Homes received, or expected to receive, compensation for placing Plaintiffs' loans with loanDepot and LGI Mortgage, including distributions or returns from these entities, referral or marketing services payments, and marked-up fees imposed on homebuyers. *Id.* ¶ 205. As explained, such allegations are insufficient.

Further, Plaintiffs do not allege the same facts that the only court apparently to address these circumstances has determined are necessary to plausibly qualify a homebuilder's employees as mortgage originators under TILA. In *Brooks v. BC Custom Construction, Inc.*, the court concluded that the plaintiffs had plausibly alleged that a homebuilder constituted a "mortgage originator" under TILA. No. 18-00717, 2019 WL 3763769, at *4, *8 (D. Or. May 21, 2019), *report and recommendation adopted*, 2019 WL 3502907 (D. Or. Aug. 1, 2019). The court so concluded based on the plaintiffs' allegations that the homebuilder "arranged private financing from [the l]ender and asked plaintiffs to provide [the l]ender with a copy of the purchase and sale agreement, their [prior b]ank loan application[,] and tax returns, as well as a $100,000 cash deposit and a non-refundable $10,000 deposit." *Id.* at *7 (internal citations omitted).

Here, however, the Complaint does not plead that LGI Homes engaged in the same specific conduct as the homebuilder in *Brooks* did to facilitate the lender's taking of a residential mortgage loan application. Notably, the plaintiffs in *Brooks* alleged that

the homebuilder "indicated that it would arrange to obtain a loan from a private lender at a cost of 1 to 1.5 percentage fee 'points' with a loan interest rate of 10%." *Id.* at *1. And "[w]hen [the] plaintiffs questioned why [the Holt Group (whose role was then apparently unclear)] needed to see their tax returns, [the homebuilder] responded that the 'lender' 'want[ed] to see [their] tax returns for the previous two years to ensure [that they] have loan qualifications." *Id.* (quotations omitted).

Unlike the allegations of the homebuilder's involvement in the mortgage loan application process in *Brooks*, Plaintiffs make no allegation that LGI Homes was involved in their mortgage loan application processes. By their own allegations, Plaintiffs knew that LGI Homes was the homebuilder and that loanDepot was the mortgage lender. Plaintiffs applied for their mortgage with loanDepot, not LGI Homes, and received their mortgage-related disclosures from loanDepot, not LGI Homes. Accordingly, Plaintiffs do not plausibly allege that LGI Homes assisted either Plaintiff in obtaining, or applying to obtain, a residential mortgage loan.

**iv. <u>LGI Homes Did Not Negotiate Terms of a Residential Mortgage Loan</u>**

Plaintiffs also fail to plausibly allege that LGI Homes "offer[ed] or negotiate[d] terms of a residential mortgage loan." 15 U.S.C. § 1602(dd)(2)(A)(iii). As relevant here, Regulation Z excludes from the "loan originator" definition any "person who does not take a consumer credit application or offer or negotiate credit terms available from a creditor." 12 C.F.R. § 1026.36(a)(1)(i)(A). Regulation Z also defines "credit terms" to "include[] rates, fees, and other costs" and provides that they "are selected

based on the consumer's financial characteristics when those terms are selected based on any factors that may influence a credit decision." *Id.* § 1026.36(a)(6).

Plaintiffs do not allege that LGI Homes offered or negotiated terms of a residential mortgage loan. *See* Compl. ¶¶ 131–57. This pleading deficiency becomes clear upon review of Plaintiffs' own factual allegations. As to each named Plaintiff, they specifically allege that they worked with loanDepot to obtain their mortgage loans. Aside from conclusory assertions, the Complaint does not allege that LGI Homes salespeople engaged in anything more than generalized discussions untethered to the specific terms of any mortgage loan.

For example, in response to Plaintiff Connelly's alleged statement "that she would like to keep her total monthly payments below $2,000," the LGI Homes salesperson supposedly advised her "to supplement her income." *Id.* ¶ 138. The alleged statements in the Complaint are general in nature and do not relate to any specific loan product or loan term that would apply to Plaintiff Connelly—let alone a term based on any factor that may influence a credit decision. And these alleged interactions happened before she even filled out a mortgage loan application with loanDepot. Likewise, Plaintiff Wilson alleges that an LGI Homes salesperson advised him "that, as a disabled veteran, he would be able to buy a brand new house for $300,000." *Id.* ¶ 149. But again, this alleged statement does not refer to any specific loan term and is general in nature. At most, this alleged statement refers to the general price of a home.[6]

---

[6] HOA fees are not "credit terms" because they are not determined based on the borrower's financial characteristics. *See* 12 C.F.R. § 1026.36(a)(6).

Tellingly, each Plaintiff explicitly alleges that, after signing their purchase agreement with LGI Homes, they were referred to and worked with loanDepot to apply for and obtain a mortgage loan. Plaintiffs allege no involvement by LGI Homes in connection with their mortgage loan application process.

**v. <u>Plaintiffs Do Not Identify a Specific Licensing Law That Was Violated</u>**

Plaintiffs fail to identify any specific federal or state law under which LGI Homes salespeople were required to be licensed. The Complaint alleges a violation of 15 U.S.C. § 1639b(b)(1), which provides that "each mortgage originator shall ... be qualified and, when required, registered and licensed as a mortgage originator in accordance with applicable State or Federal law, including the Secure and Fair Enforcement for Mortgage Licensing Act." But the Complaint does not then clarify which specific law required LGI Homes salespeople to be licensed as mortgage originators. Rather, the complaint simply concludes that these salespeople constituted "mortgage originators" under the definition set forth in TILA. A person does not, however, violate TILA simply by satisfying the statute's definition of "mortgage originator" without being licensed as such under *any* law. Thus, the Complaint's failure to identify a specific mortgage originator licensing law that was violated presents another basis for dismissing Plaintiffs' TILA claim.

**B. <u>Failure to Plausibly Allege Steering</u>**

Separately, Plaintiffs allege that "LGI [Homes] steered Plaintiffs ... to loanDepot and LGI Mortgage financing in violation of 15 U.S.C. § 1639b(c)(3)." Compl. ¶ 207. As relevant here, section 1639b(c)(3)(A) directs the Consumer Financial

Protection Bureau (the "CFPB") to promulgate regulations prohibiting "mortgage originators from steering any consumer to a residential mortgage loan that ... the consumer lacks a reasonable ability to repay" or that "has predatory characteristics or effects (such as equity stripping, excessive fees, or abusive terms)." And section 1639b(c)(3)(B) directs the CFPB to promulgate regulations prohibiting "mortgage originators from steering any consumer from a residential mortgage loan for which the consumer is qualified that is a qualified mortgage ... to a residential mortgage loan that is not a qualified mortgage."

The subsections of section 1639b that address steering do not, however, proscribe specific conduct by themselves.[7] They provide statutory authorization for the CFPB to promulgate regulations addressing the conduct described. And the Complaint does not cite the regulations that the CFPB promulgated—let alone plead the requisite factual allegations to establish a violation of any of these regulations. *See Lee v. Nationstar Mortg., LLC*, No. 16-3156, 2018 WL 558445, at *2 (Bankr. D. Or. Jan. 24, 2018) (dismissing claim "because 15 U.S.C. § 1639b(c)(3)(C) does not impose any legal obligation on [the lender] *vis a vis* [the plaintiff]" and this section only "directs the promulgation of regulations" but the plaintiff "ha[d] not identified any regulation that [the lender] ha[d] allegedly violated").

Additionally, the plain language of these statutory provisions refers to steering by "mortgage originators." But as explained in the prior section, Plaintiffs do not

---

[7] As explained earlier, this claim does not allege a violation of a statutory section that provides for a private right of action because section 1639b does not provide for any right of action.

plausibly allege that LGI Homes constitutes a "mortgage originator," so Plaintiffs cannot plausibly allege that LGI Homes violated section 1639b(c)(3)(A) or (B).

Further, a violation of section 1639b(c)(3)(A) requires steering borrowers to specific loan products that are unaffordable or predatory. The Complaint, however, alleges only that LGI Homes steered borrowers to loanDepot and LGI Mortgage, not to specific loan products. As to Plaintiff Connelly, the Complaint alleges only that "LGI [Homes] put Ms. Connelly in contact with LGI Mortgage." Compl. ¶ 139. And as to Plaintiff Wilson, the Complaint alleges only that "LGI [Homes] directed Mr. Wilson to loanDepot for financing." *Id.* ¶ 152. Finally, the Complaint does not anywhere refer to a qualified mortgage—let alone that Plaintiffs were steered away from any qualified mortgage—so it cannot state a claim under section 1639b(c)(3)(B).

The Complaint's allegations to the contrary are conclusory and unsupported. Plaintiffs' allegation that LGI Homes "direct[ed] Homebuyers into loans that Homebuyers lacked a reasonable ability to repay," Compl. ¶ 207(c), is conclusory and, once again, does not maintain that LGI Homes steered either named Plaintiff (or any specific homebuyer) to a specific mortgage loan. Likewise, the allegation that "LGI directed Mr. Wilson to loanDepot for financing" even though Mr. Wilson wanted to explore obtaining a VA home loan that likely would have been cheaper," *id.* ¶ 152, is an aside. The Complaint makes no allegation that Plaintiff Wilson discussed any specific VA loan product with an LGI Homes salesperson—let alone any VA loan product from which he was purportedly dissuaded.

* * *

Accordingly, Plaintiffs fail to plausibly allege that LGI Homes violated TILA by employing salespeople engaged in unlicensed mortgage originator activity or steering homebuyers to obtain loans from loanDepot and LGI Mortgage.

## V. *Alternatively*, Dismissal of State Law Claims for Failure to State a Claim

As set forth above, LGI Homes asserts that the first through third causes of action must be submitted to arbitration and the fourth cause of action must be dismissed as against LGI Homes for failure to state a claim. To the extent this Court concludes that the arbitration provision is not enforceable with respect to any of the first three causes, then each such cause should be dismissed under Florida law for failure to state a claim.[8]

Each of the three claims revolve around each Plaintiff's purchase of his/her home, which was a transaction governed by a contract, and that contract precludes such claims. Specifically, each of the Purchase Agreements provides in pertinent parts:

> **26. GENERAL TERMS AND CONDITIONS**
> **…**
> K. COMPLETE AGREEMENT. This Agreement is a fully integrated agreement and constitutes the entire agreement between Buyer and Seller with respect to Buyer's purchase of the Property from Seller. **This Agreement supersedes all prior written or verbal negotiations, discussions and writings between the parties and there are no other agreements, verbal or written, that modify or affect this Agreement**. The applicable provisions of this Agreement shall survive Closing as contemplated for the intent and purposes herein. This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. …
> …

[8] LGI Homes makes this alternative argument so as not to waive its right to make a 12(b) argument, but LGI Homes does not waive its main argument that the first three causes of action must be arbitrated pursuant to the valid and binding arbitration provision in the Purchase Agreements.

> 29. BUYER REPRESENTS THAT BUYER HAS READ AND UNDERSTANDS THIS AGREEMENT, INCLUDING THE AGREEMENT FOR ALTERNATIVE DISPUTE RESOLUTION. BUYER AGREES THAT NO VERBAL STATEMENT, PROMISE, OR CONDITION NOT SPECIFICALLY LISTED IN THIS AGREEMENT IS BEING RELIED UPON BY BUYER. BUYER ACKNOWLEDGES THAT THERE ARE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, BY SELLER, ITS EMPLOYEES, OWNERS, SHAREHOLDERS, OFFICERS, DIRECTORS, OR AGENTS EXCEPT THOSE CONTAINED HEREIN. THIS AGREEMENT CANNOT BE MODIFIED OR AMENDED EXCEPT BY WRITTEN AGREEMENT SIGNED BY THE PARTIES. BUYER ACKNOWLEDGES THAT SELLER IS RELYING ON THESE REPRESENTATIONS AND WOULD NOT ENTER INTO THIS AGREEMENT WITHOUT THIS UNDERSTANDING.

Exs. 1 & 3 at § 26(K) (bolded emphasis in original), § 29 (entire section capitalized and bolded in original, underlining added for emphasis).

### A. FDUTPA

FDUTPA is a consumer protection statute that protects consumers "from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). To state a FDUTPA claim, a plaintiff must establish three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Carriuolo v. General Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016); *Kelly v. Lee County RV Sales Co.*, Case No. 8:18-CV-424-JDW-JSS, 2018 WL 3126750, at *3 (M.D. Fla. June 26, 2018). "To satisfy the first element, the plaintiff must show that the alleged practice or act was likely to deceive a consumer acting reasonably in the same circumstances." *Kelly*, 2018 WL 3126750, at *3 (citing *Carriulo*, 823 F.3d at 983). "'[A]n unfair practice is one which causes substantial injury to a consumer which the consumer could not have reasonably

avoided and which is not outweighed by countervailing benefits to the consumer or to competition.'" *Medmoun v. Home Depot U.S.A., Inc.*, Case No. 8:21-cv-1585-KKM-CPT2022 WL 1443919, 2022 WL 1443919, at *4 (M.D. Fla. May 7, 2022) (quoting *Angelo v. Parker*, 275 So.3d 752, 755 (Fla. 1st DCA 2019)). "'Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably.'" *Kelly*, 2018 WL 3126750, at * 3 (quoting *Carriulo*, 823 F.3d at 983).

Plaintiffs' FDUTPA claim fails as a matter of law because the entirety of the claim is based upon each Plaintiff's dissatisfaction with his/her home purchase, which was a transaction governed by contract. *See* Compl. ¶¶ 183-188. Specifically, Plaintiffs assert that "Defendants" engaged in "high- pressure sales tactics, ... required them to undergo credit checks and credit counseling ... concealed and misrepresented the true monthly cost of homeownership ... and steered Homebuyers to loanDepot and LGI Mortgage for financing" and assert that he/she "would not have entered into [the home purchase] but for Defendants' misrepresentations and misleading business practices." Compl. ¶¶ 185-86. Sections 26(K) and 29 of the contracts unequivocally establish that the contract is the entire agreement and supersedes any and all prior written and oral negotiations or representations. *See* Exs. 1 & 3. "A consumer does not act reasonably, and thus cannot show an unfair or deceptive practice, when he relies on alleged misrepresentations that are disclaimed in a contract he signed." *Medmoun*, 2022 WL 1443919, at *4 (citing *TRG Night Hawk v. Registry Dev.*, 17 So.3d 782, 784 (Fla. 2d DCA 2009)); *Kelly*, 2018 WL 3126750, at *3 ("a party who signs a contract

whose terms contradict the alleged misrepresentations on which he relied is barred from seeking relief pursuant to FDUTPA, as he acted unreasonably." (quoting *TRG Night Hawk* 17 So.3d at 784)); *JustTech, LLC v. Kaseya US LLC*, Case No. 22-22454-CIV-MARTINEZ, 2023 WL 5529845, at *9 (S.D. Fla. Aug. 28, 2023) (same); *Kennedy v. Deschenes*, No. 17-60110-Civ-Scola, 2017 WL 2223050, at *5 (S.D. Fla. May 19, 2017) (same).

**B. <u>Fraud and Negligent Misrepresentation</u>**

Plaintiffs' fraud and negligent misrepresentation claims fail for much the same reason as the FDUTPA claim. Both of these claims are based upon essentially the same alleged act: "Defendants misrepresented the cost of the homes in their advertisements and loan documents and concealed details about the homes" (Compl. ¶ 191 – fraud claim); "Defendants misrepresented the price of the homes LGI sold, which is a material fact" (Compl. ¶ 197 – misrepresentation claim). Thus, both claims are based on alleged misrepresentations.

Under Florida law, the elements for showing fraud and for negligent misrepresentation are similar. "For fraudulent misrepresentation, the Plaintiff must establish: (1) a false statement concerning a material fact; (2) the representer's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.… Similar to fraudulent misrepresentation, to prevail on a claim for negligent misrepresentation, the Plaintiff must establish: (1) the

defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *Woodson Elec. Sols., Inc. v. Port Royal Prop., LLC*, 271 So.3d 111, 114 n.2 (Fla. 3d DCA 2019) (quoting *Howard v. Murray*, 184 So.3d 1155, 1167 n.22, n.23 (Fla. 1st DCA 2015)); *see also* *Kennedy*, 2017 WL 2223050, at *4 (stating elements for various types of fraud claims are the same) (citations omitted); *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So.2d 631, 632 (Fla. 4th DCA 2005) (elements for fraud).

"It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud." *Peebles v. Puig*, 223 So.3d 1065, 1068–69 (Fla. 3d DCA 2017) (citing *La Pesca Grande Charters, Inc. v. Moran*, 704 So.2d 710, 712-13 (Fla. 5th DCA 1998)); *see LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So.2d 1161, 1167 (Fla. 2d DCA 2007); *La Pesca Grande Charters*, 704 So.2d at 712. "Under Florida law, '[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.'" *Kennedy*, 2017 WL 2223050, at *4 (quoting *Hillcrest Pacific Corp. v. Yamamura*, 727 So.2d 1053, 1056 (Fla. 4th DCA 1999)); *see also* *TRG Night Hawk*, 17 So.3d at 784; *GVK Int'l Bus. Group, Inc. v. Levkovitz*, 307 So.3d 144, 146 (Fla. 3d DCA 2020) (citing *Hillcrest* and *TRG Night Hawk* and dismissing both

fraudulent and negligent misrepresentation claims (additional citations omitted)); *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 542-43 (Fla. 5th DCA 2003); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So.2d 630, 634 (Fla. 4th DCA 2005); *Tevini v. Roscioli Yacht Sales, Inc.*, 597 So.2d 913, 914-15 (Fla. 4th DCA 1992) (applying same rule to a claim for negligent misrepresentation).

Furthermore, just as with the FDUTPA claim, a party cannot, as a matter of law, plead justifiable reliance on purported misrepresentations that are contradicted by the written contracts at issue. *Mac-Gray Servs.*, 913 So.2d 630, 634 (Fla. 4th DCA 2005) ("[R]eliance upon oral statements which [are] at variance with the written documents [are] not reasonable as a matter of law."); *accord Medmoun*, 2022 WL 1443919, at *4; *TRG Night Hawk*, 17 So.3d at 784; *Kelly*, 2018 WL 3126750, at *3; *JustTech, LLC*, 2023 WL 5529845, at *9; *Kennedy*, 2017 WL 2223050, at *5.

* * *

Accordingly, if the Court does not compel arbitration, the Florida state law claims must be dismissed for failure to state a claim.

**<u>CONCLUSION</u>**

For these reasons, LGI Homes requests that the Court enter an order compelling arbitration and staying the proceedings or, alternatively, that the Court dismiss the Complaint in its entirety.

**LOCAL RULE 3.01(g) CERTIFICATION**

I HEREBY CERTIFY that counsel for Defendant, LGI Homes, conferred with counsel for Plaintiffs via email and telephone on September 18, 2026, and Plaintiffs oppose the relief request herein.

Dated: September 21, 2026

Respectfully submitted,

/s/ ***Kelly Garcia***
T. Todd Pittenger – Lead Counsel
Florida Bar No. 768936
todd.pittenger@gray-robinson.com
Kelly J. H. Garcia
Florida Bar No.: 0694851
kelly.garcia@gray-robinson.com
**GRAYROBINSON, P.A.**
301 East Pine Street, Suite 1400
Orlando, Florida 32801
Telephone: 407/843-8880

Mitchel H. Kider, *pro hac vice*
kider@thewbkfirm.com
Timothy Ofak, *pro hac vice*
ofak@thewbkfirm.com
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
Fax: (202) 628-2011

*Counsel for Defendant, LGI Homes, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 21, 2026, the foregoing document was filed with the Clerk of the Court using CM/ECF, which shall serve copies on all attorneys of record.

*/s/ Kelly Garcia*
KELLY GARCIA
*Counsel for Defendant, LGI Homes, Inc.*