# EXHIBIT C

LGI HOMES

LGI HOMES - FLORIDA, LLC

PURCHASE AGREEMENT for TRILBY CROSSING

**THIS DOCUMENT CREATES IMPORTANT LEGAL OBLIGATIONS THAT YOU SHOULD UNDERSTAND PRIOR TO SIGNING, INCLUDING A REQUIREMENT THAT ANY DISPUTES BE DECIDED BY ALTERNATIVE DISPUTE RESOLUTION. YOU SHOULD READ IT THOROUGHLY AND IF YOU ARE UNCERTAIN OR HAVE QUESTIONS ABOUT YOUR RIGHTS, OBLIGATIONS OR RESPONSIBILITIES UNDER THIS AGREEMENT, CONSULT AN ATTORNEY.**

**1. PARTIES**

SELLER: LGI HOMES - FLORIDA, LLC

BUYER(S): Mara Connelly

**2. PROPERTY DESCRIPTION / PRICE**

Seller agrees to sell and Buyer agrees to buy the Pasco floorplan on the following described property, subject to the terms and conditions set forth in this Purchase Agreement ("***Agreement***"): Lot **246**, Block **0**, Section **2** of TRILBY CROSSING PHASE 2, Hernando County, Florida. Property address known as: [redacted], **Brooksville, FL, 34602 ("*Property*")** for **$349,900.00** ("***Purchase Price***").

**3. DEPOSIT**

Seller acknowledges receipt of **$1,000.00** as a deposit ("***Initial Deposit***") to bind the parties to this Agreement, which sum shall be held by Seller and applied at the Closing of the Property from Seller to Buyer as contemplated by this Agreement (the "***Closing***") toward the Closing costs to be paid by Buyer under Sections 8B(1) and 8B(2). An additional amount **$_____** ("***Additional Deposit***") paid at the time of execution of this Agreement shall be applied toward the Purchase Price. **The Initial Deposit and Additional Deposit, in the aggregate the "*Deposit*", will not be placed in escrow, but will be paid directly to Seller and held by Seller under the terms of this Agreement.**

**4. FINANCING**

The remaining amount of the Purchase Price will be paid as follows: (check one box only):

☒ (1) Buyer's obligations under this Agreement are subject to Buyer being approved for financing.

☐ (2) Buyer's obligations under this Agreement are not subject to Buyer being approved for financing.

**5. LOAN APPLICATION/ CREDIT REPORTS**

If Buyer is obtaining financing, Buyer agrees to make its loan application within three (3) business days of the Effective Date of this Agreement. Buyer will use its best efforts to qualify for and obtain financing for the purchase of the Property and will fully cooperate with Buyer's lender to obtain approval for a loan sufficient to finance the purchase of the Property ("***Financing Approval***"). Notwithstanding anything to the contrary contained herein, if Buyer i) fails to make an appropriate application within that time, ii) fails to use its best efforts or fully cooperate with their lender in all respects, or iii) fails to provide Seller with proof of conditional loan approval, on the lender's customary form and in an amount sufficient to purchase the Property, within fourteen (14) days of the Effective Date of this Agreement, then Seller may, in its sole and exclusive discretion, terminate this Agreement and retain the Deposit as liquidated damages, which is a reasonable estimate of Seller's damages, not a penalty. If Buyer timely makes all efforts for Financing Approval as required herein and otherwise fully complies with the terms and conditions of this Agreement but is unable to obtain Financing Approval, Buyer may give written notice ("***Buyer's Termination Notice***") to Seller within fourteen (14) days of the Effective Date of this Agreement that Buyer wishes to terminate the Agreement due to Buyer's inability to obtain Financing Approval. In such event, if all the above conditions are satisfied, Seller will refund the Deposit. If Buyer does not give Buyer's Termination Notice within the time required, this Agreement will no longer be contingent upon Financing Approval and will be fully binding on Buyer.

Once Financing Approval is obtained by Buyer, if Buyer subsequently fails to diligently pursue all requirements and conditions with respect to the loan, or Buyer does not fully and timely meet any requirements or conditions with respect to the loan, or the lender rescinds the Financing Approval, or the lender for any reason declines to fund the loan, Seller may, in its sole and exclusive discretion, terminate this Agreement and retain the Deposit as liquidated damages, which is a reasonable estimate of Seller's damages, not a penalty.

Time is of the essence for this section and strict compliance with the time for performance is required.

Buyer hereby authorizes its lender to disclose to Seller any and all credit, employment, income and other financial information concerning Buyer and hereby waives any claim or cause of action of or concerning privacy rights, confidential information or otherwise relating to any such disclosure.

## 6. CLOSING

The parties agree to close on the purchase of the Property using **Empower Title, LLC** ("***Settlement Agent***") at the Seller's office located at 29284 Fedora Circle, Brooksville, FL 34602 within 48 hours of Buyer being notified by Seller or Title Company. At Closing, Seller will execute a limited or special warranty deed or other form of deed if required by or customary under state law ("***Deed***"), conveying the Property to Buyer, subject to all matters of record and matters discoverable by inspection or survey, the standard exceptions, and the Exceptions (which term is defined herein). Taxes and assessments for the year of Closing shall be prorated to the date of Closing based on the latest valuations and tax rates. These valuations and tax rates may be estimated. The Buyer is responsible for taxes and assessments (1) due and payable on or after the day of Closing, and/or (2) increased valuations or rates not estimated as the same amount as the final amount due. All such prorations shall be final and not subject to review or refund. Seller will not be responsible for any taxes or assessments due and payable on or after the day of Closing.

Seller will estimate a Closing date on or near substantial completion of the home, and it is estimated that such Closing date will be on or before **8/13/2024**. Seller may extend the Closing date for any reason. Construction of the home on the Property may be delayed due to inclement weather, other circumstances beyond Seller's control or for Seller's convenience. The home will be deemed substantially complete on the date a temporary or conditional certificate of occupancy or any other document evidencing that the home may be legally occupied, whether subject to conditions or otherwise, is issued by an appropriate governmental authority, and if no such certificate of occupancy is required, then the date the Property can be occupied. There is no guaranteed or warranted completion date. Buyer has not relied, and will not rely upon, any estimated completion date for any purpose whatsoever, and Seller will not be liable for any additional costs, expenses or damages whatsoever, including but not limited to rent, reletting fees, temporary accommodations, taxes, insurance, or storage fees, should the home be completed earlier or later than the estimated completion date.

It is the express intent of the parties that the parties' rights and obligations under this Agreement be construed in the manner necessary to exempt this Agreement and sale from registration under the Interstate Land Sales Full Disclosure Act, and both Buyer and Seller hereby expressly waive any right or provision of this Agreement that would otherwise preclude any such exemption.

## 7. TITLE POLICY

**Empower Title, LLC**("***Title Company***") shall issue to Buyer an owner's policy of title insurance ("***Title Policy***") covering the Property in the amount of the Purchase Price, dated as of the date of Closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the exclusions and exceptions stated therein (collectively, the "***Exceptions")***, which may include but are not necessarily limited to the following:

A. Zoning, building codes, ordinances and regulations;
B. Real estate taxes and assessments for the year of conveyance and subsequent years;
C. The standard printed exceptions and other exceptions contained in the schedules to an owner's title insurance policy ("***Standard Printed Exceptions***");
D. Utility easements and agreements, restrictions, covenants, reservations and other matters affecting title to the Property;
E. Encroachments and other matters that would be disclosed by an accurate survey or inspection of the Property;
F. Standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements;
G. Declarations and common interest/ planned community documents affecting the Property;
H. Any laws and restrictions, covenants, conditions, reservations, agreements or easements recorded in the public records for the county (provided they do not prevent use of the Property for single family residential purposes);
I. Matters resulting from the inclusion of the Property into any special district;
J. Standard printed exception as to marital rights;
K. Standard printed exception as to water rights, waters, tidelands, beaches, streams, and related matters; and
L. Liens created as a part of the financing for purchase by Buyer, acts done or suffered by Buyer and any mortgage or deed of trust obtained by Buyer for the purchase of the Property.

THE SURFACE ESTATE MAY BE OWNED SEPARATELY FROM THE UNDERLYING MINERAL ESTATE, AND TRANSFER OF THE SURFACE ESTATE DOES NOT NECESSARILY INCLUDE TRANSFER OF THE MINERAL RIGHTS. THIRD PARTIES MAY HOLD INTERESTS IN OIL, GAS, OTHER MINERALS, GEOTHERMAL ENERGY OR WATER ON OR UNDER THE PROPERTY, WHICH INTERESTS MAY GIVE THEM RIGHTS TO ENTER AND USE THE PROPERTY.

Buyer shall pay for the cost of the Title Policy, unless the Title Policy is issued by Title Company and either (i) Buyer obtains financing from **LGI Mortgage Solutions ("Preferred Lender")**, or (ii) Buyer pays all cash for the Property, in which events Seller shall pay for the cost of the Title Policy. If Buyer obtains financing from any other mortgage lender or obtains a title policy from another title company, the cost of any title policy will be paid by Buyer. Buyer acknowledges and agrees that the Seller has not directly or indirectly required Buyer, as a condition of sale, to use any particular lender. Buyer may elect to use any lender of Buyer's choosing. Upon

written request by Buyer to the Title Company, the Title Company will provide to Buyer, a Commitment for Title Insurance ("***Commitment***") and, at Buyer's request and expense, legible copies of documents evidencing exceptions in the Commitment other than the Standard Printed Exceptions.

If Buyer makes a written request to the Title Company for the Commitment. Buyer shall make any objections in writing to the Commitment within ten (10) days after the receipt of the Commitment. Buyer shall have no right to object to the Standard Printed Exceptions. If Seller does not receive notice of Buyer's title objections within such ten (10) day period, Buyer shall be deemed to have waived its right to object and shall accept title to the Property in the condition described in the Commitment. If title objections are raised by Buyer within the ten (10) day period provided above, Seller may, but shall not have the obligation to, cure said title objections prior to Closing and the Closing date shall be extended no more than forty-five (45) days from the date stated in this Agreement. If Seller elects not to cure the title objections, this Agreement shall terminate and the Deposit shall be refunded to Buyer as Buyer's sole and exclusive remedy, unless Buyer elects to waive the uncured objections and complete the purchase of the Property within the time set by Seller.

As required by the Real Estate Settlement Procedures Act of 1974, Buyer acknowledges that the Seller has not directly or indirectly required Buyer, as a condition of sale, to purchase either a fee owner's or mortgagee's title insurance policy from any particular title company. Buyer shall notify Seller within ten (10) days of the Effective Date of this Agreement should Buyer elect to purchase, at Buyer's expense, a title insurance policy from another title company.

## 8. SETTLEMENT AND OTHER EXPENSES

Closing costs shall be allocated and paid as follows, except as otherwise required by law in the Property's jurisdiction:

A. Closing costs payable by Seller:

1. Amounts required to release existing liens or otherwise satisfy any such lien through indemnity, escrow, or otherwise under applicable law;
2. Owner association assessments for all periods prior to Closing;
3. Preparation of deed and other expenses payable by Seller under this Agreement; and
4. The cost of the Title Policy, but only if the Title Policy is issued by Title Company and either (i) Buyer obtains financing from the Preferred Lender or (ii) Buyer pays all cash for the Property. If these conditions are not met, the cost of the title policy is paid by Buyer.

B. Closing costs payable by Buyer ("***Buyer's Closing Costs***"):

1. Appraisal fees, any fees and taxes (including governmental fees and taxes) payable upon the transfer of real property, credit reports, flood certificates, preparation of loan documents, interest on Buyer's loan(s) (if any is due) from date of disbursement to one month prior to the due date of the first monthly payment(s), any lender's policy of title insurance (other than a Title Policy for which Seller pays under certain conditions pursuant to Section 8A above) and all endorsements to the title policy that are required by a lender, loan-related inspection fees, final inspection fees, escrow fees, owner's association transfer fees, all prepaid impounds, including required premiums for flood and hazard insurance, reserve deposits for insurance, underwriting fees, wire transfer fees, and owner association assessments on or after the date of Closing;
2. Underwriting, processing, administration, and application fees, documentation preparation fees, recording fees, lender's attorney review fees, document processing fees and other similar fees;
3. Optional fees and expenses associated with Buyer's loan, including discount, buy-down, origination, and compliance fees; and
4. Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, USDA Guarantee Fee, or FHA Mortgage Insurance Premium (MIP) as required by any lender.

C. Seller's contribution towards Buyer's Closing costs:

At Closing, Buyer shall contribute an additional amount **$2,000.00** ("**Additional Closing Contribution**") that will be applied towards Eligible Buyer's Closing Costs. If Buyer uses the Preferred Lender LGI Mortgage Solutions, or pays all cash, then, at Closing, Seller shall contribute to Buyer's Closing Costs ☒ up to 4% of the Purchase Price or ☐ up to $0.00, excluding (i) any items described in Sections 8B(3) and 8B(4), (ii) owner association assessments after December 31 of the calendar year of Closing, (iii) the cost of a title policy if Buyer elected to purchase, at Buyer's expense, a title insurance policy (as referenced in Section 7) from a provider other than Title Company, and (iv) a homeowners insurance policy (as referenced in Section 18) if Buyer elected to purchase from a provider other than LGI Insurance (in the aggregate "***Eligible Buyer's Closing Costs***"). Seller's contribution towards the Eligible Buyer's Closing Costs will be limited to the amount of such costs remaining after application of the Initial Deposit and the Additional Closing Contribution to such Eligible Buyer's Closing Costs. If Buyer obtains financing from any mortgage lender other than the Preferred Lender, Buyer will be responsible for all of Buyer's Closing Costs and Seller will pay none. Buyer acknowledges and agrees that the Seller has not directly or indirectly required Buyer, as a condition of sale, to use any particular lender. Buyer may elect to use any lender of Buyer's choosing.

limited to, any materials, information, or documentation provided by Seller or available to Buyer from any source, any other home constructed by Seller, or any model home.

## 13. TREES AND LANDSCAPING

Landscaping will be in accordance with Seller's standard landscape package. Seller reserves the right to determine the type and number of plants, trees, shrubs and/or sodding. If the completion of landscaping must be delayed until seasonal conditions permit completion, the landscaping will be completed post-Closing. In such circumstances, Seller will make reasonable efforts to complete the landscaping work timely based on seasonal conditions and availability of materials and goods.

Seller does not guarantee or warrant the survival of any tree or other vegetation on or near the Property for any stated period of time. All trees are subject to limb removal or total removal as Seller may deem necessary for construction. The removal of trees by utility service providers (water, sewer, electric, cable, telephone, etc.) may occur, and is not a responsibility of Seller. After Closing, the maintenance of all landscaping is the responsibility of the Buyer and Buyer understands that Seller will not be responsible for any landscaping-related claims such as tree removal, wash out, regrading, reseeding or replacement of sod. Any and all warranties or claims relating to the trees or vegetation existing on the Property or on Property adjoining the Property are waived and released by Buyer and disclaimed by Seller.

## 14. GRADING / DRAINAGE / PROPERTY USE

Drainage and grading shall be deemed accepted and approved by Buyer at the time of Closing. **Buyer acknowledges that it is Buyer's responsibility to maintain the grading of the Property. Buyer understands that altering the grading of the Property by landscaping, adding a pool, lack of maintenance, etc., may result in an alteration of the drainage of the Property and void any warranty provided by Seller.** Buyer agrees to abide by all zoning ordinances, restrictions and conditions and applicable owners' association ("***Homeowners' Association***") requirements imposed on the Property. Buyer understands that Seller has no control over any zoning changes affecting the Property or any surrounding areas. Seller makes no representations or warranties concerning the future use of any property within the vicinity of the Property. It is the sole responsibility of Buyer to determine the zoning of any property surrounding or adjacent to the Property. Buyer also accepts all existing easements affecting the Property and understands that Seller is not responsible for any governmental or quasi-governmental or utility provider actions with respect to the Property.

**Buyer understands the importance of maintaining the slope of the final grade of the soil away from the foundation so that rain water does not collect and pond against or adjacent to the foundation. It is essential that the grade of the lot slopes away from your foundation at all times.** Seller will perform the final grade according to applicable standards and code, as necessitated by the site conditions and approved by the engineer of record, or recommended by the third-party warranty company. **Buyer must maintain the final grade and surface water drainage patterns and swales must not be altered by Buyer. Any alteration of or failure to maintain the slope or landscaping could lead to foundation damage and/or failure and the damage will be the responsibility of Buyer.**

## 15. HOMEOWNER ORIENTATION

Within approximately 48 hours prior to Closing, Buyer and Seller shall meet to walk through the home and prepare a "Final Punch List" of all incomplete items or corrections of the Property and improvements, including the landscaping. Buyer may engage, at Buyer's own expense, the services of a qualified, licensed and insured inspector to perform an independent inspection or be available for the walk through. Seller will make good faith efforts to complete the work described in the Final Punch List prior to Closing, subject to delays caused by matters beyond the control of Seller. Closing shall not take place until such time Buyer has signed off and accepted the work described in the Final Punch List and accepting the Property in its "as is" condition, unless Buyer fails to prepare a Final Punch List with Seller, in which event Closing shall not be delayed. Once the work described in the Final Punch List has been accepted by Buyer, all future requests for repairs must be made in writing to Seller through Seller's online warranty portal and handled through Seller's customer service department.

## 16. NOTICE OF MEMBERSHIP IN HOMEOWNERS' ASSOCIATION

The Property presently ☒ is, ☐ is not, subject to restrictive covenants governing the use and occupancy of the Property ("***Covenants***"). Buyer acknowledges that unless the Property will not be subject to Covenants, a dedicatory instrument governing the establishment, maintenance and operation of this residential community has been or will be recorded in the real property records of the county in which the Property is located and the recorded Covenants will be contained in the Commitment or otherwise made available to Buyer. Buyer acknowledges that the Covenants may require Buyer to be a member of a homeowners' association or other community association ("**Homeowners' Association**") governing the community pursuant to such Covenants. The Covenants may obligate Buyer to pay periodic assessments and certain fees to the Homeowners' Association, and may authorize the Homeowners' Association to levy from time to time certain assessments, fees, fines, and/or penalties against either the Property or Buyer, which Buyer will be obligated to pay. Buyer's failure to pay such amounts could result in a lien being placed upon the Property which, if not timely paid, could result in a judgment being entered against the Buyer and foreclosure of the Property.

**17. ENTRY ONTO PROPERTY**

Buyer acknowledges that entry upon the Property during construction can be dangerous and that hazards may exist that are not observable. Buyer's, or Buyer's invitee's entry on the Property shall be at Buyer's sole risk. **Buyer hereby waives any and all claims against Seller for injury or damage to person or property arising out of or in connection with entry upon the Property by Buyer or any other person accompanying Buyer or entering at Buyer's discretion (each a "Buyer Invitee"). Buyer shall indemnify, defend and hold Seller harmless from and against any and all claims, injury, loss, damage or expense suffered by or asserted against Seller in any way arising from or related to entry upon the Property by Buyer or any Buyer's Invitees.** Buyer may not enter the Property without Seller's written permission prior to Closing, and the grant of such permission by Seller does not waive any provisions of this Section. This Section shall survive the Closing.

**18. HOMEOWNER'S INSURANCE**

Buyer agrees that it will purchase a homeowner's insurance policy with coverage that will be in effect on the Closing date. Buyer acknowledges that the monthly homeowner's insurance premium will affect any estimated monthly payment that Seller has provided to Buyer. Buyer shall notify Seller within ten (10) days of the Effective Date of this Agreement should Buyer elect to purchase, at Buyer's expense, an insurance policy from an insurance company other than LGI Insurance.

**19. CASUALTY LOSS**

If all or any portion of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this Agreement, prior to Closing, Seller shall restore the Property to its previous condition as soon as reasonably possible. If, due to factors beyond Seller's control, Seller is unable to fully restore the Property prior to the scheduled Closing date, Buyer may elect to: (A) terminate this Agreement and the Deposit will be refunded to Buyer, or (B) extend the Closing date for so long as reasonably necessary to restore the Property; provided that if Seller reasonably anticipates it will take more than thirty (30) days to fully restore the Property, Seller may elect to terminate this Agreement and, in such event, the Deposit shall be returned to Buyer and the parties shall have no further rights or obligations under this Agreement.

**20. LIMITED WARRANTIES**

**A. WARRANTY**

Seller or its contractor, but not both, provide an express limited warranty for certain improvements, including workmanship for 1-year (such as cabinets, mirrors, flooring, walls, countertops, paint finishes, trim) and systems for 1-year (such as HVAC, plumbing, electrical, mechanical) starting from the date of Closing of the sale of the Property ("***Limited Warranty***"). The applicable standards for the Limited Warranty will be those promulgated by 2-10 Home Buyer's Warranty, which will be provided to you in writing at Closing and can be located at www.2-10.com/LGI. Buyer agrees that in the event of a discrepancy between the Limited Warranty standards provided at Closing and those located on the referenced website, those provided at Closing will govern. Seller or its contractor, but not both, as designated in the applicable warranty documents, will also provide an express limited warranty for structural improvements (such as foundation and framing), for the length of the Statute of Repose of the state in which the Property is located pursuant to an express written third-party warranty document (the "***Structural Warranty***"). Buyer acknowledges receipt of the Structural Warranty and is aware that a specimen copy of the Structural Warranty will be provided upon request and is available to Buyer at www.2-10.com/LGI. The actual Structural Warranty issued after Closing controls over any warranty specimen provided by Seller or obtained by Buyer. Appliances may be covered by separate manufacturer warranties that will be assigned to Buyer without recourse; Buyer shall look only to the manufacturer for claims relating to manufactured products. There is no warranty provided for landscaping, trees, ground cover, grass, or other plant material.

**B. DISCLAIMER AND WAIVER OF WARRANTIES**

**BUYER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS SPECIFICALLY SET FORTH IN THE AGREEMENT, SELLER HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, AND/OR GUARANTEES OF ANY KIND OR CHARACTER WHATSOEVER. BUYER AGREES THAT THE LIMITED WARRANTY AND STRUCTURAL WARRANTY ARE THE ONLY WARRANTIES RELATED TO THIS AGREEMENT OR THE PROPERTY. TO THE FULLEST EXTENT ALLOWED UNDER LAW AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE WARRANTIES, BUYER WAIVES AND SELLER DISCLAIMS, ANY AND ALL GUARANTEES, REPRESENTATIONS, PROMISES, COVENANTS AND WARRANTIES, EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST PRESENT OR FUTURE, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF PERFORMANCE, MERCHANTABILITY, SUITABILITY, MODIFICATION, REPAIR, WORKMANSHIP, HABITABILITY AND FITNESS FOR A PARTICULAR PURPOSE. BUYER ACKNOWLEDGES THAT THIS WAIVER AND DISCLAIMER IS CONSPICUOUSLY PRESENTED AND THAT BUYER AND SELLER HAVE SPECIFICALLY BARGAINED FOR THE PURCHASE PRICE FOR THE PROPERTY IN EXCHANGE FOR THE MANNER, PERFORMANCE, AND QUALITY OF THE CONSTRUCTION OF THE HOME AND IMPROVEMENTS, AND THE DURATION AND SCOPE OF THE LIMITED WARRANTY AND STRUCTURAL WARRANTY PROVIDED. SAVE AND EXCEPT FOR THE WARRANTIES PROVIDED HEREIN, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS AGREEMENT, THE PROPERTY AND THE IMPROVEMENTS ARE SOLD "AS IS, WHERE IS". NO EXPRESS WARRANTY IS MADE BY: (A) ANY AFFIRMATION OF FACT OR PROMISE THAT THE PROPERTY OR ANY RIGHT OR USE RELATED THERETO WILL CONFORM TO THE AFFIRMATION OF FACT OR PROMISE MADE; (B) THE DISPLAY OF ANY MODEL OR THE DEPICTION OF ANY PHYSICAL CHARACTERISTICS OF THE LOT IMPROVEMENTS OR**

THE COMMUNITY, INCLUDING THE PLAN OR ANY OTHER PLANS OR SPECIFICATIONS; (C) ANY DESCRIPTION OF THE REAL ESTATE COMPRISING OR CONTEMPLATED TO COMPRISE THE COMMUNITY OR OF THE UNITS OR AMENITIES CONTEMPLATED TO BE A PART OF THE COMMUNITY, INCLUDING PLOTS, PLATS, OR SURVEYS; OR (D) ANY REPRESENTATION MADE BY ANY AGENT OF SELLER THAT BUYER MAY PUT ANY OF THE PROPERTY TO A SPECIFIC USE OTHER THAN RESIDENTIAL. ANY AND ALL DISPUTES REGARDING WARRANTY SHALL BE SUBJECT TO BINDING ARBITRATION AS SET FORTH IN THIS AGREEMENT.

**C. BUYER ACKNOWLEDGES THAT THIS ENTIRE SECTION OF THE AGREEMENT CONCERNING SELLER'S WARRANTY, INCLUDING SUBPARTS A AND B OF SECTION 20 HEREIN, CONSTITUTES AN INTEGRAL PART OF THE BASIS OF THE BARGAIN BETWEEN BUYER AND SELLER SET FORTH IN THE AGREEMENT AND A MATERIAL CONSIDERATION FOR SELLER ACCEPTING THE AGREEMENT. SELLER WOULD NOT HAVE ACCEPTED THE AGREEMENT AND AGREED TO SELL THE PROPERTY TO BUYER AT THE PURCHASE PRICE WITHOUT THE LIMITATIONS AND PROVISIONS PROVIDED IN THIS SECTION. THE PROVISIONS ARE NOT SEVERABLE FROM THE REST OF THE CONTRACT.**

D. Neither this Agreement nor the Limited Warranty or Structural Warranty (together the "Warranties") replace homeowner's insurance. There is no warranty obligation for any loss paid, covered claim, repair or the like if same is available through any homeowners' insurance. Any and all repairs performed by any party, including Buyer, without full compliance with this Agreement and the Warranties waives any Seller obligation and any claim or cause of action against Seller related to same.

E. If Seller or the Structural Warranty administrator requires access to the Property as a result of a warranty claim, Buyer shall allow Seller and Structural Warranty administrator's designees full access to the property during Seller's normal business hours for testing, inspection and repairs. Refusal to provide such access or delay of more than five business days from verbal or written request of the Seller will waive and void any Seller warranty obligation.

F. For items in need of repair pursuant to the Warranties or due to a construction defect, Seller shall have the sole right to determine the means, method, and manner of repairs to be implemented. Repairs shall be made so that the condition is returned to its condition as it existed at the time immediately preceding the construction defect, any repair will be finished or touched up to match the surrounding area as closely as is practical but not necessarily to a like-new condition, and imperfections and variations will exist and should be expected. A repair or action bringing a variance within the standard under the Warranties shall not cause the period of the applicable warranty to be extended.

G. Any variations in any element of the Property's construction from the plans and specifications approved by the engineer of record, the local building official, governing authority, city inspector, or third-party inspector is deemed not outside applicable performance standards and is specifically excluded from the Warranties. **BUYER WAIVES ALL CLAIMS OF ANY KIND, WHETHER ARISING FROM THE APPLICABLE BUILDING CODE, STRICT LIABILITY, NEGLIGENCE, BREACH OF CONTRACT, OR BREACH OF WARRANTY TO THE EXTENT THAT THE CLAIM ARISES FROM A VIOLATION OF STANDARDS YET DOES NOT RESULT IN PHYSICAL DAMAGE TO THE PROPERTY. TO THE EXTENT ANY FAILURE TO MEET AN APPLICABLE CODE OR STANDARD BY ITSELF FOR ANY ELEMENT OF THE IMPROVEMENTS GIVES RISE TO A STRICT LIABILITY, NEGLIGENCE PER SE, BREACH OF CONTRACT OR BREACH OF WARRANTY CLAIM AGAINST SELLER, BUYER HEREBY WAIVES ALL SUCH CLAIMS.** Seller shall not be required to utilize any repair method that would result in economic waste or be required to repair items or areas that are not damaged.

## 21. DISPUTE RESOLUTION – NON-BINDING MEDIATION AND BINDING ARBITRATION

**Any and all claims, disputes and controversies by or between Buyer and Seller, whether in contract, equity or tort, arising out of, or in any way related to the purchase of the Property, the construction related to the Property, or otherwise related to Buyer's dealings or relationships with Seller (a "*Dispute*") shall be resolved solely by the dispute resolution process identified in this Section. Buyer acknowledges and agrees that this dispute resolution process means Buyer is waiving the right to trial by judge and/or jury.**

**Any proceeding involving a Dispute will be brought, conducted, and decided only in the county and state where the Property is located.**

### A. Seller's Right to Repair

**For any Dispute related to the workmanship, quality, performance, appearance, or functionality of the Property or its elements (a "Defect Claim"), Buyer shall provide Seller with written notice and an opportunity to repair before commencing any other proceeding.**

As to each defect, the notice shall identify (1) the defect, (2) the defect's location, and (3) the impairment caused or likely to be caused by the defect. After receiving written notice, the Seller may request access to inspect the Property. The Buyer shall promptly provide reasonable access for Seller to inspect the Property. If Seller performs destructive testing, Seller will restore the Property to its pre-inspection status; such restoration may occur in conjunction with repairs by Seller. Provided Buyer promptly provides Seller with reasonable access for the inspection, Seller shall have 60 days after receiving notice of the defect(s) to inform Buyer that Seller wishes to repair any or all of the claimed defects. Buyer shall provide Seller with reasonable access to the Property to perform repairs. After Seller has performed repairs (or after Seller waives its right to perform repairs), Buyer may pursue mediation and arbitration of a Defect Claim under the terms of this section 21 of the Agreement. If Buyer later discovers additional Defect Claims, Buyer must provide Seller with notice an opportunity to repair the additional claims before pursuing such claims in any other proceeding.

B. Mediation. Prior to conducting any arbitration, either party may, in its sole discretion, require that a Dispute be submitted to non-binding mediation. If either party elects to submit a Dispute to non-binding mediation after a demand for arbitration has been filed, the parties mutually agree to stay or abate the arbitration and any other proceedings until the mediation concludes. The parties agree to use the American Arbitration Association ("AAA") to conduct the mediation. The cost of mediation shall be shared equally by Buyer and Seller; however, should either party engage an attorney, consultant or expert, the fees and expenses of such attorney, consultant or expert shall be paid solely by the incurring party.

C. Arbitration. Binding arbitration shall be conducted by the AAA, Judicial Arbitration & Mediation Services ("JAMS") or DeMars & Associates, Ltd. ("DeMars") pursuant to applicable rules except as modified herein. The choice of arbitration service shall be made by Seller after its receipt of written notice of a Dispute. All administrative fees of the arbitration service and arbitrator's fees shall be shared equally by Buyer and Seller. All attorney's fees and expenses, and consultant and expert fees and expenses shall be paid by the incurring party. The arbitrator must follow the applicable State's substantive law, except to the extent explicitly modified herein. Notwithstanding the preceding sentence, and except as otherwise specifically provided herein with regards to actions to compel mediation or arbitration, the arbitrator shall have no authority to, and shall not, award fees or costs of one party to the other, including administrative fees of the arbitration service, arbitrator's fees, attorney's fees and expenses, and consultant and expert fees and expenses. Both Buyer and Seller waive any right to recover any such fees or expenses from the other in any legal proceeding even if otherwise allowed by statute, CC&Rs, or otherwise. If an arbitration service provider charges an upfront application fee or other initial cost as a prerequisite to accepting a Dispute to arbitration, then the parties mutually agree to equally share such upfront fees. Time is strictly of the essence for each party to pay the arbitration service provider for their proportional share of upfront fees.

Notwithstanding any other provision herein, if either Buyer or Seller brings any successful court action to compel mediation or arbitration under this Agreement, then the party compelling mediation or arbitration shall be entitled to recover from the other party its reasonable attorney's fees and costs incurred in that court action. Mediation and arbitration shall be conducted privately, with final adjudication held strictly confidential by the parties, and as such, a court action shall only be filed out of necessity to compel mediation or arbitration of a party refusing to participate in mediation or arbitration.

The parties agree that this Agreement and this arbitration provision involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule. Any and all issues relating to the arbitrability of the Dispute shall be decided by the arbitrator.

Buyer waives the right to institute or participate in a class action arbitration or litigation for any Dispute or other matter covered by this Agreement. Buyer shall not consolidate or join any Dispute covered by this Agreement with any dispute or claim of any other current or former owner of property in the subdivision in arbitration, litigation, or other proceeding. The arbitration shall solely include and involve Buyer and Seller to this Agreement and any subcontractors, suppliers, and vendors chosen by Seller for inclusion. Buyer and Seller hereby agree and acknowledge that this arbitration provision is intended to benefit and be binding on any occupant or subsequent purchaser of the Property.

Any Dispute and all dispute resolution procedures, mediations, arbitrations and court filings referenced herein shall be held in the strictest of confidence and shall be considered private in all respects. Notwithstanding anything to the contrary in any third party warranty document, the terms and conditions of the dispute resolution procedures herein shall supersede and control if Seller is a party to the matter. The arbitrator is required to apply the applicable state's law and shall have no authority to award any damage to a party unless such damages are specifically provided for by state or Federal law.

Neither any warranty nor the dispute resolution procedures herein waive or supplant any right-to-cure or repair statute or any other statutory pre-suit procedures, all of which are conditions precedent to any mediation and/or arbitration.

IN THE EVENT THAT FOR ANY REASON A CLAIM IS DETERMINED NOT TO BE SUBJECT TO BINDING ARBITRATION UNDER THIS SECTION 21, THEN BUYER AND SELLER KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATED TO THIS AGREEMENT OR THE PROPERTY, INCLUDING SUCH ACTIONS, PROCEEDINGS, OR COUNTERCLAIMS IN WHICH BUYER AND SELLER AS WELL AS OTHERS ARE PARTIES.

Buyer and Seller agree that notwithstanding anything to the contrary, the rights and obligations set forth in this dispute resolution provision shall survive (1) the termination of this Agreement by either party; (2) the default of this Agreement by either party; or (3) any Closing and delivery of deed. The waiver or invalidity of any portion of this dispute resolution provision shall not affect the validity or enforceability of the remaining portions of this dispute resolution provision and/or the Agreement. Buyer and Seller further agree (1) that any dispute involving Seller's directors, officers, partners, employees, affiliates and agents shall be resolved as set forth herein and not in a court of law or equity; and (2) that Seller shall have the option to include its subcontractors, suppliers, and vendors as parties in the alternative dispute resolution procedures set forth in this Agreement. Buyer's acceptance of these dispute resolution procedures is a material part of Seller's decision to sell the Property to Buyer at the Purchase Agreement.

D. Arbitration of Defect Claims

The provisions of this Section 21(D) supplement other provisions of Section 21 as applied to Defect Claims. Discovery in the arbitration shall be limited to (1) production of design and construction documents in the parties' possession; (2) production of the homeowner's

**warranty-claim and insurance-claim documents; (3) production of the homeowner's expert reports within 30 days after a demand for arbitration is made; (4) inspection of the property by Seller and their experts within 30 days after production of the homeowner's expert reports; (5) production of Seller's expert reports (if any) 30 days after their inspection of the property; and (6) expert depositions or one fact witness if the party has no experts. No other disclosure or discovery shall be permitted. No matter what factual, legal or equitable issues are alleged, the sole issues to be decided regarding allegations of construction or design defects are (1) whether a breach of this Agreement or the Warranties have occurred; (2) whether the claim is timely; (3) the cause of the defect (if contested); (4) the cost to repair the defect; (5) the diminution in value caused by the defect; and (6) any comparative fault of failure to mitigate damages. If the factfinder concludes there is a defect, then there shall also be a determination of comparative fault for any subcontractors or consultants were made part to the proceeding. The arbitrator shall have no authority to make any other findings. Within 14 days after a final decision is entered, Seller may elect to either (a) pay for diminution of value caused by the defect, or (b) pay for the cost of repair. Upon payment of the elected sum, Seller's obligations for the defects shall be discharged for all matters related to the Buyer's claim. Seller is permitted, at its election, to record a notice with the county recorder, disclosing that Seller's obligation for the defect has been discharged. Each party will pay its own attorney's fees and costs in the proceeding, and the arbitrator shall have no authority to award the fees or costs of one party against the other. Buyer acknowledges and agrees that the dispute resolution procedures contained in this paragraph are the exclusive process available to Buyer for any Defect Claim.**

**In no event will a Defect Claim be combined with any other claim of others, except claims by Seller against any subcontractors or consultants who may be alleged to have liability related to Buyer's Defect Claim.**

## 22. SELLER'S OPTION TO TERMINATE

Notwithstanding the foregoing, if, for any reason, a Dispute should arise between Buyer and Seller prior to Closing, and if such Dispute cannot be resolved to their mutual satisfaction, Seller as its sole options may either (i) submit the Dispute to binding arbitration or mediation in accordance with this Agreement, or (ii) terminate this Agreement by written notice to Buyer prior to Closing. If Seller opts to terminate this Agreement pursuant to this Section 22, the parties shall have no further rights or obligations under the Agreement (except for those that specifically survive termination). Prior to the Closing, Buyer's rights under the Agreement are executory only and may be terminated by Seller in accordance with this Section.

## 23. RESALE OF HOME

In the event Buyer sells the Property prior to expiration of the applicable warranty period for the Limited Warranty or the Structural Warranty, Buyer's purchaser will only be covered by the Structural Warranty, subject to the terms and conditions of that warranty, if all requirements for transfer are properly completed. Seller shall only be responsible for warranty claims submitted in writing to Seller by Buyer during the applicable warranty period.

## 24. DEFAULT AND REMEDIES

Pre-Closing. If Buyer fails to perform any of its obligations under this Agreement, for any reason, of if Buyer advises Seller in writing or orally prior to Closing that Buyer does not intend to or will not fully perform any provision of this Agreement, Seller may terminate this Agreement and, as its sole and exclusive remedy (except with respect to Buyer's indemnity obligations set forth herein), retain the Deposit as liquidated damages, such liquidated damages not being a penalty in any way but rather an estimate of the damages occasioned by Buyer's breach.

**IF SELLER FAILS TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT, BUYER MAY, AS ITS SOLE AND EXCLUSIVE REMEDY, WAIVING ANY AND ALL OTHER RIGHTS, REMEDIES AND CAUSES OF ACTION, TERMINATE THIS AGREEMENT BY WRITTEN NOTICE TO SELLER, AND RECEIVE A REFUND OF THE DEPOSIT, WHEREUPON SELLER SHALL BE DEEMED FULLY RELEASED FROM ALL OF ITS OBLIGATIONS UNDER THIS AGREEMENT.**

**BUYER AND SELLER EACH WAIVES ANY RIGHT TO CONSEQUENTIAL, INDIRECT, PUNITIVE OR SPECIAL DAMAGES, OR ANY DAMAGES OTHER THAN THOSE SET FORTH IN THIS SECTION 24.**

**BUYER WAIVES ANY AND ALL RIGHTS TO SPECIFIC PERFORMANCE OF THIS AGREEMENT UNDER NO CIRCUMSTANCES SHALL BUYER FILE ANY MOTION, LAWSUIT, CLAIM OR INSTRUMENT IN A COURT OF LAW, ARBITRATION OR IN THE DEED RECORDS SO AS TO PREVENT OR THAT IS INTENDED TO PREVENT SELLER FROM TRANSFERRING TITLE TO THE PROPERTY, CREATING AN ENCUMBRANCE OR CLOUD ON TITLE OR OTHERWISE DESIGNED TO CREATE OR CLAIM AN INTEREST IN THE PROPERTY (FOR EXAMPLE A LIS PENDENS, LIEN OR NOTICE OF CLAIM INVOLVING REAL ESTATE).**

**25. REPRESENTATIONS**

Buyer and Seller agree that, except as expressly provided in this Agreement, Seller makes no representations regarding the provision or completion of roads, sewer, water, electric, telephone, or recreational amenities and no such representations have been relied upon by Buyer. Seller's obligation to complete construction of any improvements Buyer is purchasing is subject to delays caused by acts of God, material shortages, strikes or other grounds legally supportable to establish impossibility of performance.

Except as expressly provided herein, no representation has been made or is made and no responsibility has been assumed by Seller as to the condition of the Property or the value thereof, or as to any other fact or condition that has affected or might affect the Property or the condition, value, expense of development or income potential thereof. Buyer has made such examination of the Property and its condition, zoning, use restrictions, permitting and governmental approvals, utility supply, building permit requirements and fees and all other matters as Buyer deems necessary. All contracts, agreements and understandings between Buyer and Seller must be expressed in writing in this Agreement or a written amendment thereto. Buyer specifically waives and disclaims reliance on any representations not contained herein, whether oral or written.

**26. GENERAL TERMS AND CONDITIONS**

A. OTHER PARTIES BOUND. Buyer and Seller each bind themselves and their respective heirs, executors, administrators, partners, successors, assigns, and legal representatives in all matters related to this Agreement.

B. NO ASSIGNMENT BY BUYER. Buyer does not have the right to assign this Agreement without Seller's written consent which Seller may withhold in its sole discretion. Seller may freely assign this Agreement without the consent of Buyer.

C. NO RECORDING. Buyer shall not be permitted to record this Agreement for any reason.

D. TIME OF THE ESSENCE. Time is of the essence in this Agreement.

E. BACK-UP OFFERS. Unless expressly prohibited in writing by the parties, Seller may continue to show and/or list the Property for sale and to receive, negotiate and accept back-up offers.

F. PERMISSION FOR INTERNET/SOCIAL MEDIA PUBLICATION. Buyer grants Seller permission to take pictures and video of the Property and the improvements for the purpose of promoting Seller's work on its website, the internet, social media, contests, or literature. Buyer hereby waives any claim for compensation of any kind related to this permission and publication, and Buyer further waives any related claims, including, but not limited to, a violation of Buyer's privacy or any other personal or property rights.

G. LAND USE AND ENVIRONMENTAL DISCLAIMERS. The Seller has informed the Buyer and Buyer acknowledges the following:

1. Adjacent Land Usage. The Seller is neither responsible for nor has control of the use of the land adjacent to or in the vicinity of the Property and makes no representations or warranties with respect to the use or future use of the land adjacent to or in the vicinity of the Property. Buyer hereby waives any claims or causes of action relating to land adjacent to or in the vicinity of the Property. The Seller also has no control over and is not responsible for any easements on, adjacent to, or in the vicinity of the Property. Buyer understands that individuals, corporations, and/or utilities may have specific rights granted by those easements, if any, including but not limited to, access to and use of the land described by the easements, even though the use of any easement may not be evident at the present time.

2. Environmental Risk. The Seller makes no warranties, express or implied, about the existing or future health hazards or environmental conditions on the Property, in the improvements, or from adjacent sources, including, but not limited to, exposure to radon gas, electric and magnetic fields, shifting or instability of the soil and contamination of the improvements or the surrounding air, water or soil from any sources or in any manner. Buyer is advised that the continued presence of moisture on components of the improvements can cause the propagation of mold that may cause allergenic reactions and other health problems in some individuals. Upon assuming possession of the improvements, Buyer is responsible for implementing an inspection and maintenance program for the identification and elimination of moisture in the improvements that could give rise to the growth of mold or other conditions detrimental to functioning of the improvements or the health of its occupants. Any leak or the presence of moisture that is covered by the Limited Warranty will be corrected pursuant to the applicable warranty documents, but the Buyer's failure to implement an effective maintenance program or the failure to promptly notify the Seller of warranty claims will negate the Seller's responsibility (if any) for any property damage, personal injury, or other loss, damage or liability resulting directly or indirectly from the presence of mold or other harmful organisms.

H. LIMITATIONS ON CLAIMS.

1. Limitation of Claims. Under no circumstances shall either Buyer or Seller be liable for any special, indirect, or punitive, consequential damages, including claims of mental anguish, except as otherwise specifically set forth in this Agreement. Notwithstanding any applicable time periods for statutes of limitation and statutes of repose under state law, any action or claim, regardless of form, that arises from or relates to this Agreement, the quality of materials or workmanship of construction and improvements on the Property is barred unless either Buyer or Seller properly files an action under the dispute resolution procedures herein not later than two (2) years and one (1) day from the date the cause of action accrues.

2. Waiver of Subrogation. Buyer agrees that after occupancy or Closing, whichever comes first, Buyer shall secure and maintain insurance covering risk of loss and damage to the improvements. The parties further mutually agree that with respect to any loss or damage that may occur to the Property, improvements, personal property, persons, third-parties, or any other loss by reason of fire, the elements, or any other cause that could be or is insured against under the terms of standard fire and extended coverage insurance policies, or any other insurance, regardless of the cause or origin, including negligence of the parties, their agents, officers, or employees, Buyer or subsequent owners suffering such loss, hereby release Seller and any person or entity in privity with Seller from any and all claims with respect to such loss. Buyer agrees that Buyer's insurance companies shall have no right of subrogation against Seller and any person or entity in privity with Seller and their insurance carriers on account of any such loss, as all rights of subrogation are hereby waived and disclaimed. Nothing contained in this paragraph shall be deemed to modify or otherwise affect releases of either party from liability for claims elsewhere herein contained.

I. ONGOING DEVELOPMENT. Seller has informed the Buyer and Buyer acknowledges and agrees to the following:

1. Seller hereby reserves the right to develop the subdivision or project in which the Property is located ("***Subdivision***"), including the right to build homes which may differ substantially from the models, if any, the Property, or other homes in the Subdivision. Seller has the right to at any time, and from time to time, without notice to elect for whatever reasons Seller deems appropriate in its sole and absolute discretion:

   a. Change the style, design, size, price or any other feature or attribute of any future homes that Seller has built or may build in the future in the current or any future phase of the Subdivision;
   b. Change the timing of its construction of any other homes or to decide not to build any or all other homes contemplated by Seller's project development plan, as such plan may be modified from time to time; and
   c. Use any method or marketing to sell, lease or otherwise dispose of any or all of its remaining or future inventory of homes, including the use of incentives, concessions, price reductions, lot sale programs, bulk sales or other promotions and techniques.

2. Buyer acknowledges and recognizes that in as much as Buyer is purchasing the Property during a period of construction, the improvements for the Property may be completed prior to the completion of other homes, streets and other infrastructure in the Subdivision. There may be certain inconveniences and/or damage to property or person(s) until construction in the entire Subdivision is completed. **Buyer for himself/herself and his/her invitees, successors and assigns hereby releases Seller and its officers, employees, affiliates and agents from any and all liabilities and claims with respect thereto.**

J. FUTURE VALUE OF PROPERTY. Seller disclaims any representation or warranty, express or implied, regarding the future improvements or future value of the Property, and Buyer releases Seller from any claims, demands, or causes of action arising therefrom. Buyer understands that the future value of the Property is uncertain and dependent on many factors. Buyer acknowledges that property may increase or decrease in value and Buyer is not purchasing the Property because of Buyer's expectation that the Property will increase in value. Buyer understands that, especially when purchasing a home with little or no money down, it may be difficult to build equity in the home for a substantial amount of time. Buyer understands that property values may fluctuate up or down, which may affect Buyer's ability to resell the Property in the future.

K. COMPLETE AGREEMENT. This Agreement is a fully integrated agreement and constitutes the entire agreement between Buyer and Seller with respect to Buyer's purchase of the Property from Seller. **This Agreement supersedes all prior written or verbal negotiations, discussions and writings between the parties and there are no other agreements, verbal or written, that modify or affect this Agreement.** The applicable provisions of this Agreement shall survive Closing as contemplated for the intent and purposes herein. This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. No additions to or modifications of this Agreement will be effective unless they are set forth in writing on Seller's standard amendment form and signed by both Buyer and Seller.

L. FORECLOSURE. Notwithstanding any other term or condition herein, any warranty obligation of Seller does not apply to Property and/or improvements that have been subject to a foreclosure under law or a deed in lieu of foreclosure, such Property and improvements are taken "AS IS, with all faults" by any and all subsequent owners, whether one or more.

## 27. STATE LAW APPLIES / DISCLOSURES

This Agreement is governed by the laws of the State of Florida. Unless otherwise specifically stated in this Agreement, if any terms, covenants, or provisions of this Agreement shall be illegal or unenforceable for any reason, the same shall not invalidate any other term, covenants, or provisions, and all of the remaining terms, covenants, and provisions shall remain in full force and effect. This Agreement is intended to give all required disclosures mandated by state law including the following:

A. Pursuant to Fla. Stat. 501.1375(2), the following legend is provided:

**DEPOSIT. THE BUYER OF A ONE-FAMILY OR TWO-FAMILY RESIDENTIAL DWELLING UNIT HAS THE RIGHT TO HAVE ALL DEPOSIT FUNDS (UP TO 10 PERCENT OF THE PURCHASE PRICE) DEPOSITED IN AN ESCROW ACCOUNT. THIS RIGHT MAY BE WAIVED, IN WRITING, BY BUYER. BY INITIALING IN THIS SECTION BELOW, BUYER HEREBY WAIVES THIS RIGHT.**

Initials: ______ Buyer ______ Co-Buyer

B. **<u>NO BROKERAGE RELATIONSHIP NOTICE</u>: FLORIDA LAW REQUIRES THAT REAL ESTATE LICENSEES WHO HAVE NO BROKERAGE RELATIONSHIP WITH A POTENTIAL SELLER OR BUYER DISCLOSE THEIR DUTIES TO SELLERS AND BUYERS.**

As a real estate licensee who has no brokerage relationship with Buyer, Seller owes to Buyer the following duties:

1. Dealing honestly and fairly;
2. Disclosing all known facts that materially affect the value of residential real property which are not readily observable to Buyer.
3. Accounting for all funds entrusted to Seller.

**BY INITIALING IN THIS SECTION BELOW, BUYER ACKNOWLEDGES THIS NO BROKERAGE RELATIONSHIP NOTICE.**

Initials: ______ Buyer ______ Co-Buyer

C. **DISCLOSURE SUMMARY FOR TRILBY CROSSING SUBDIVISION**. The following disclosure is provided to the extent the Property is or will be located within a common interest community:

1. **AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION.**

2. **THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.**

3. **YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $0.00 PER YEAR. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ PER YEAR.**

4. **YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.**

5. **YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.**

6. **THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $0.00 PER YEAR.**

7. **THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.**

8. **THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE BUYER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.**

9. **THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.**

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES HAS NOT BEEN PROVIDED TO THE PROSPECTIVE BUYER BEFORE EXECUTING THIS AGREEMENT FOR SALE, THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE**

**OF BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING. PLEASE REFER TO THE DISCLOSURE SUMMARY REQUIRED UNDER SECTION 720.401, FLORIDA STATUTES INCLUDED ABOVE. DO NOT SIGN THIS AGREEMENT UNTIL YOU HAVE RECEIVED AND READ THE DISCLOSURE SUMMARY.**

Initials: MEC ______ Buyer ______ Co-Buyer

D. Pursuant to Fla. Stat. 689.261, the following property tax disclosure summary is provided herein:

**PROPERTY TAX DISCLOSURE SUMMARY**

**BUYER SHOULD NOT RELY ON SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.**

E. COMPLIANCE WITH APPLICABLE REQUIREMENTS & FLORIDA'S CONSTRUCTION DEFECT STATUTE. **As a condition precedent to the applicability of any warranty obligation of Seller, including the Limited Warranty or Third Party Warranty, the Buyer must follow each term and condition in this Agreement, the requirements of applicable law, and any and all other applicable requirements in any instrument related to the Property. ANY CLAIMS FOR CONSTRUCTION DEFECTS ARE SUBJECT TO THE NOTICE AND CURE PROVISIONS OF CHAPTER 558, FLORIDA STATUTES.**

F. Pursuant to Fla. Stat. 489.1425, the following written statement is provided herein:

**FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND**

**PAYMENT, UP TO A LIMITED AMOUNT, MAY BE AVAILABLE FROM THE FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS: (850) 487-1395; 2601 Blair Stone Road, Tallahassee, FL 32399.**

G. ENERGY. Pursuant to Section 553.996 and Section 553.9085, Florida Statutes, Buyer may request that Seller cause a State Certified Energy Rater to perform an energy-efficiency rating on the Home being purchased. In addition, the applicable energy performance level display card will be delivered to Buyer at Closing, which card will be deemed a part of this Agreement. Buyer hereby releases Seller from any responsibility or liability for the accuracy of the energy performance level as may be disclosed by Seller to Buyer or any information contained on the energy performance level display card. Buyer understands and agrees that: (i) this Agreement is not contingent upon Buyer approving the rating, (ii) the rating is solely for Buyer's own information and (iii) Buyer will pay the total cost of the rating. This Section G is intended for the sole and exclusive use of Buyer for the transaction contemplated herein only, and Seller shall not be liable or responsible to any third party who has relied upon the information contained herein. Buyer acknowledges its receipt, review and understanding of this Section G prior to, or at the time of, Buyer's execution of this Agreement.

H. RADON NOTICE PURSUANT TO SECTION 404.056(5), FLORIDA STATUTES. RADON GAS. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

I. MOLD DISCLOSURE. There are many types of mold, molds are naturally occurring microscopic fungi that found almost anywhere. Molds may grow on virtually any organic substance, as long as oxygen and moisture are present. Molds can be found in homes on wood, paper, carpet, foods and insulation, among other locations. Inhabitable properties are not, and cannot be, constructed to exclude mold. Mold when accumulated in sufficient quantities may present health risks to susceptible persons. For more information, contact the county indoor air quality specialist or other appropriate professional.

J. FLOOD ZONE. Buyer is advised to verify by survey, with the lender, and with appropriate government agencies which flood zone the Property is in, whether flood insurance is required, and what restrictions apply to improving the Property and rebuilding in the event of a casualty. If the Property is in a special flood hazard area or a coastal high hazard area and the buildings are built below the minimum flood elevation, Buyer may cancel this Agreement by delivering written notice to Seller within 20 days after the Effective Date, failing which Buyer accepts the existing elevation of the buildings and zone designation of the Property.

K. Upon Closing all contracted services to be performed under this Agreement by Seller (the "**Services under Contract**") shall be deemed completed and fully performed, and this Agreement shall be deemed completed, within the meaning of Florida Statutes § 95.11(3)(b). Services under Contract shall not include any corrections of defects or deficiencies in the home on the Property, punch list work, or warranty work.

L. MEGAN'S LAW DISCLOSURE/DATABASE REGARDING REGISTERED SEX OFFENDERS. Pursuant to Section 943.0435, Florida Statutes, sexual offenders must complete a registration form at their county sheriff's office. Information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Florida Department of Law Enforcement ("**FDLE**") at www.fdle.state.fl.us. This information will include, if available, the offender's name, the address at which the offender resides, offender's status, and address source information.

Prior to the purchase of the Property, Buyer may research the database to determine whether there are sex offenders in the area. Seller makes no representations, warranties, or guarantees regarding the presence or absence of registered sex offenders within the community where the Property is located or in the surrounding area. Seller has no obligation or duty to investigate existing residents or buyers to determine whether they are sex offenders. Buyer is solely responsible for making his or her own investigation. For further information, please contact FDLE.

M. BOND LOAN PROGRAM. Seller will pay any fees that Buyer would otherwise be required to pay in order to use the selected bond loan program.

N. BUSINESS AFFILIATION. LGI Homes – Florida, LLC is a subsidiary of LGI Homes, Inc., which has a 50% ownership interest in LGI Mortgage Solutions, LLC. See the Affiliated Business Arrangement Disclosure for additional information.

**28. ADDENDA**

The following addenda are attached hereto and incorporated by reference:

☐ Other: ___________

**29. BUYER REPRESENTS THAT BUYER HAS READ AND UNDERSTANDS THIS AGREEMENT, INCLUDING THE AGREEMENT FOR ALTERNATIVE DISPUTE RESOLUTION. BUYER AGREES THAT NO VERBAL STATEMENT, PROMISE, OR CONDITION NOT SPECIFICALLY LISTED IN THIS AGREEMENT IS BEING RELIED UPON BY BUYER. BUYER ACKNOWLEDGES THAT THERE ARE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, BY SELLER, ITS EMPLOYEES, OWNERS, SHAREHOLDERS, OFFICERS, DIRECTORS, OR AGENTS EXCEPT THOSE CONTAINED HEREIN. THIS AGREEMENT CANNOT BE MODIFIED OR AMENDED EXCEPT BY WRITTEN AGREEMENT SIGNED BY THE PARTIES. BUYER ACKNOWLEDGES THAT SELLER IS RELYING ON THESE REPRESENTATIONS AND WOULD NOT ENTER INTO THIS AGREEMENT WITHOUT THIS UNDERSTANDING.**

**30. SPECIAL DISTRICT/COMMUNITY DEVELOPMENT DISTRICT ("CDD") DISCLOSURE.**

☒ **Not applicable.**

☐ **THE TRILBY CROSSING COMMUNITY DEVELOPMENT DISTRICT MAY IMPOSE AND LEVY TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY. THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION, AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT. THESE TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY LAW. BUYERS SHOULD INVESTIGATE THE SPECIAL TAXING DISTRICTS/CDDS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY, AND BY OBTAINING FURTHER INFORMATION FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND RECORDER, OR THE COUNTY ASSESSOR.**

**(Signature page to follow)**

## SIGNATURES OF PARTIES:

ACCEPTED: Buyer's Signature ______________________

Printed Name Mara Connelly

Present Address [redacted]

Home _____ Business _____

Cell [redacted] Email [redacted]

ACCEPTED: Co-Buyer's Signature ______________________

Printed Name

Present Address _____

_____

Home _____ Business _____

Cell _____ Email _____

SELLER: **LGI HOMES - FLORIDA, LLC**

By: ______________________

Printed Name: Josh Petitt

Title: Sales Manager and Authorized Agent

**Signed and Effective Date:** 7/14/24

Appointment Date: 7/15/2024 at 6:00 P.M.

**SELLER'S RECEIPT OF DEPOSIT**

Receipt of $1,000.00 Deposit is acknowledged by Seller in the form of: Check # 3110654011

By: ______________________

Printed Name: Josh Petitt

Title: Sales Manager and Authorized Agent

## NOTICE TO BUYER

Pursuant to Master Plan H-17-17, LGI Homes – Florida, LLC discloses to buyer at [redacted] in TRILBY CROSSING PHASE 2 that Florida Classic Park regularly conducts events throughout the year.

______________________ 7/14/24
Buyer Date

**Mara Connelly**
Print Name

______________________ ______________
Buyer Date

Print Name

# AUTHORIZATION TO RELEASE INFORMATION AND REMOTE CLOSING

We, the undersigned Buyer(s)/Borrower(s) and Seller(s) of the Property located at [redacted] **Brooksville, Hernando County, FL 34602** (property address) as part of the transaction evidenced by that certain Real Estate Purchase Contract or Loan Application, request a Notary remote closing at the office of LGI Homes located at 29284 Fedora Circle, Brooksville, FL 34602. The fee for this service is estimated at $135-$150 and will be included on the Closing Disclosure/HUD.

We do authorize Empower Title, LLC and its employees, as Settlement Agent, to discuss and release information and documentation, **including non-public information**, to the following individuals or entities.

- Loan Officers and Brokers working on the subject transaction
- Both Listing and Selling Agents or their Real Estate Companies
- Split Title Companies and their Underwriters
- Title Companies and Underwriters seeking proof of property clearing information
- Banks, Lenders, Attorneys, or other entities or individuals who held or hold unreleased liens, either voluntary or involuntary, against the subject property
- Settlement Agent's underwriter
- Notary Public
- Seller and Buyer

Information that may be shared includes, but is not limited to, Closing Disclosures, Settlement Statements, Underwriter and/or funding conditions and requirements, Proof of Payoff, policy information, and any other information or documentation deemed by Empower Title, LLC necessary to complete the transaction, clear title to the property and provide a satisfactory Title Insurance Policy.

Empower Title, LLC follows any lender instructions, as well as all state and federal rules and guidelines when sharing non-public information to the parties listed herein. Empower Title, LLC will limit the sharing of information to that which is necessary to completing the transaction, clear title and issue a satisfactory policy of insurance. All non-public information will be securely stored and no information will be shared with any party other than those specifically listed herein.

We, the undersigned Buyer(s) hereby request a remote signing, not at the office of the title company. The signing shall take place at the LGI Homes Sales Center located at 29284 Fedora Circle, Brooksville, FL 34602 or at another location designated in advance of closing.

AGREED TO AND ACCEPTED BY:

Signature: Mara E. Con [signature]
**Mara Connelly**
Date Received: 7/14/24, 20____

Signature: ______________________ Date Received: ______________, 20____

**Seller: LGI HOMES - FLORIDA, LLC**

By: [signature]
Printed Name: Josh Petitt
Title: Sales Manager and Authorized Agent

# EMPOWER TITLE, L.L.C., AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE NOTICE

To: Empower Title Customers

From: L2W Services, LLC and The Law Office of Douglas K. Watson, II

This is to give you notice that L2W SERVICES, LLC'S owners DOUGLAS K. WATSON, II, JOHN GH LEGGETT, JR. AND CASEY JON LAMBRIGHT and THE LAW OFFICE OF DOUGLAS K. WATSON, II have a business relationship with Empower Title, L.L.C. This relationship involves the ownership of 30% of Empower Title, L.L.C. Because of this relationship, this referral may provide L2W SERVICES, LLC'S owners DOUGLAS K. WATSON, II, JOHN GH LEGGETT, JR. AND CASEY JON LAMBRIGHT and THE LAW OFFICE OF DOUGLAS K. WATSON, II a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for settlement of your loan or purchase, sale or refinance of the subject property. **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

L2W SERVICES, LLC:

| | |
|---|---|
| Tax Certificate Fee | $35.00 to $75.00 |

THE LAW OFFICE OF DOUGLAS K. WATSON, II:

| | |
|---|---|
| Document Preparation Fee | $50.00 to $250.00 |

I/we have read this disclosure form, and understand that Empower Title, L.L.C.is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

Buyer's Signature: Mara E. Con[signature]
Printed Name: Mara Connelly
Date Received: 7/14, 20 24

Co-Buyer's Signature: __________
Printed Name:
Date Received: __________, 20____

## Affiliated Business Arrangement Disclosure

This disclosure is provided to you by LGI HOMES - FLORIDA, LLC.

LGI HOMES - FLORIDA, LLC is a subsidiary of LGI Homes Inc. LGI Homes, Inc. ("LGI Homes") has a business relationship with (i) LGI Mortgage Solutions, LLC ("LMS"), a mortgage broker, and (ii) loanDepot.com, LLC ("loanDepot"), a mortgage broker. The business relationships referenced are that (a) LGI Homes has a 50% ownership interest in LMS, and (b) 50% of LMS is owned by loanDepot, to whom a large percentage of LMS loans will likely be brokered. Because of these relationships, any referral by LGI HOMES - FLORIDA, LLC to LMS may provide LGI Homes and/or its affiliates with a financial or other benefit.

Set forth below is the estimated charge of range of charges for the settlement services listed. You are **NOT** required to use LMS as a condition for settlement of your loan on, or purchase, sale, or refinance of, the subject property. **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

**LMS** – Mortgage Broker. LMS will not make any charges to the purchaser/borrower for its services but will receive compensation from the lenders to whom it brokers (including loanDepot) of up to 2.8% of the loan up to a cap of $10,000. * LMS may broker your loan to loanDepot, a mortgage lender. loanDepot originates mortgage loans but does not directly charge the purchaser/borrower any required fees. You may be charged certain third-party fees for lender-selected services, including for appraisal(s) and credit reports. You may also be charged for additional closing costs by an escrow/title company and/or a closing attorney, and you may be charged optional fees from loanDepot (or other lender), such as fees to reduce the interest rate. LMS and/or the applicable mortgage broker or lender will provide you with a Loan Estimate detailing credit costs and loan terms, including closing costs. Please refer to your Loan Estimate for an itemization of fees applicable to your loan.

*

| Loan Amount | Estimated Potential Compensation |
|---|---|
| $200,000 or less | Up to $5,600 |
| $200,001 - $300,000 | $5,600 - $8,400 |
| $300,001 - $400,000 | $8,400 - $10,000 |
| $400,001 or more | $10,000 |

**Acknowledgement:** I/We have read this disclosure form and understand that any referrals by LGI HOMES - FLORIDA, LLC for the above-described settlement service(s) may result in LGI Homes and/or its affiliates receiving a financial or other benefit.

Maria E. Cruz 7/14/24
Borrower Date

Borrower Date

## Affiliated Business Arrangement and Fee Disclosure

This disclosure is provided to you by LGI Insurance Solutions, LLC ("LGI Insurance").

LGI Homes, Inc. ("LGI Homes") has a business relationship with (i) LGI Insurance, an insurance agency, and (ii) Heimer Insurance Service, Inc. ("Heimer"), an insurance agency. LGI Homes and Heimer are the owners of LGI Insurance. Because of these relationships, any referral by LGI Homes to LGI Insurance may provide LGI Homes and/or its affiliates with a financial or other benefit.

You are NOT required to use LGI Insurance to acquire homeowners' insurance as a condition for purchase of the subject property, even if you are otherwise required to obtain homeowners insurance as a condition of a loan on the subject property. **THERE ARE OTHER INSURANCE AGENCIES AND PROVIDERS AVAILABLE WHO CAN PROVIDE HOMEOWNERS INSURANCE. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

LGI Insurance receives a commission from the insurance companies that your homeowner's insurance coverage is placed with.

**Acknowledgment**: I/We have read this disclosure form and understand that any referrals by LGI Homes for the above-described insurance may result in LGI Homes and/or its affiliates receiving a financial or other benefit.

Mara E. Com 7/14/24

Borrower Date

Borrower Date

LGI HOMES

# FL REAL ESTATE ACT ADDENDUM TO PURCHASE AGREEMENT

This FL Real Estate Act Addendum (the "Addendum") amends and supplements the Purchase Agreement dated 7/14/24 between Seller and Buyer. To the extent the terms of the Addendum conflict with the Purchase Agreement, the terms of this Addendum shall prevail. Capitalized terms used herein shall have the same definition given to them in the Purchase Agreement.

Addendum to the Agreement concerning the Property at:

Lot [redacted]

[redacted] Brooksville, Fl 34602
(Street Address and City)

Seller and Buyer hereby agree to amend the Agreement to comply with Sections 692.201-692.205 of the Florida Statues ("Prohibition Against Certain Foreign Ownership of Florida Real Estate Act"). In all other respects, the Agreement shall remain in full force and effect.

Buyer acknowledges that Buyer has read and understands the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act. Buyer further warrants and represents that neither the execution of the Agreement, the transaction described in the Agreement, nor the ownership of the Property violate the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act.

Buyer understands and acknowledges that Seller is obligated to comply with requirements set forth in the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act despite any ongoing legal actions challenging the validity of this law.

Buyer hereby warrants and represents that the following are true and correct statements pursuant to the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act:

**For individual Buyer(s), not a company: Buyer**
☑ is or ☐ is not a United States citizen or a lawful permanent resident of the United States

☐ is or ☑ is not permanently residing in, a government official of, or a member of a political party or a subdivision of a political party of the People's Republic of China

☐ is or ☑ is not permanently residing in, a government official of, or a member of a political party or a subdivision of a political party of any of the following: the Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic

**For Buyer(s) purchasing in the name of a company: Buyer**
☐ has or ☐ does not have direct or indirect individual owners that are permanently residing in, a government official of, or a member of a political party or a subdivision of a political party of the People's Republic of China

☐ has or ☐ does not have direct or indirect individual owners that are permanently residing in, a government official of, or a member of a political party or a subdivision of a political party of any of the following: the Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic

☐ has or ☐ does not have direct or indirect entity owners, or entities that have a controlling interest, that are a political party, a government entity, is organized in, or has a principal place of business in the People's Republic of China, or is a subsidiary of such entity

☐ has or ☐ does not have direct or indirect entity owners, or entities that have a controlling interest, that are a political party, a government entity, is organized in, or has a principal place of business in any of the following: the Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic, or is a subsidiary of such entity

Buyer understands and acknowledges that certain affirmative answers provided by Buyer may require additional action to determine and/or ensure Buyer's compliance with the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act. Buyer acknowledges and agrees that if Seller determines (i) the Agreement, the transaction described in the Agreement, or Buyer's ownership of the Property actually or potentially violates the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act, or (ii) Buyer intentionally or unintentionally falsified, omitted, or otherwise misrepresented any statements or information in this Addendum, Seller shall have the unilateral right to immediately terminate the Agreement and exercise any and all of its remedies under the Agreement, at law or in equity with no other recourse available to Buyer.

Buyer acknowledges that Seller is relying on the representations and warranties made by Buyer in this Addendum. Seller is not attesting to the truthfulness, accuracy, or completeness of any such statements made by Buyer. **Buyer shall defend, indemnify and hold harmless Seller and Seller's representatives, employees, affiliates and agents from and against any and all claims, causes of action, lawsuits, proceedings, and other liabilities, direct or indirect, civil or criminal, contingent or fixed, resulting from or otherwise relating to Buyer's representations or warranties set forth in this Addendum or Buyer's violation of the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act.**

Buyer further acknowledges and agrees that at Closing, Buyer will be required to execute an Affidavit, pursuant to the Prohibition Against Certain Foreign Ownership of Florida Real Estate Act, attesting to the above representations and warranties.

Mara F. Conf ______________ 7/14/24 ______________
Buyer Date

______________ ______________
Buyer Date

[signature] ______________
Seller

LGI HOMES

## CONSTRUCTION LIEN LAW NOTICE

The following notice is required pursuant to §713.015, Florida Statutes:

**ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND SERVICES AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, SUB-SUBCONTRACTORS, OR MATERIAL SUPPLIERS, THOSE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE ALREADY PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. TO PROTECT YOURSELF, YOU SHOULD STIPULATE IN THIS CONTRACT THAT BEFORE ANY PAYMENT IS MADE, YOUR CONTRACTOR IS REQUIRED TO PROVIDE YOU WITH A WRITTEN RELEASE OF LIEN FROM ANY PERSON OR COMPANY THAT HAS PROVIDED TO YOU A "NOTICE TO OWNER." FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX, AND IT IS RECOMMENDED THAT YOU CONSULT AN ATTORNEY.**

**BUYER(S) ACKNOWLEDGE THIS FLORIDA CONSTRUCTION LIEN LAW NOTICE BY INITIALING IN THIS SECTION BELOW.**

Initials: MEC ______ Buyer ______ Co-Buyer

# COMMUNITY INFORMATION FOR TRILBY CROSSING

## 1. HOMEOWNERS ASSOCIATION

| | |
|---|---|
| Name of Association: | Trilby Crossing Homeowner's Association, Inc.<br>Managed by Real Manage |
| Phone Number: | (855) 877-2472 |
| Annual Association Dues: | $660, billed at a monthly rate of $55 |

## 2. SCHOOL DISTRICT

| | |
|---|---|
| School District: | Hernando County Public Schools |
| Elementary School: | Eastside Elementary School (Prek--5th)<br>27151 Roper Road, Brooksville, FL 34602, (352) 797-7045 |
| Middle School: | D.S. Parrott Middle School (6th-8th)<br>19220 Youth Dr, Brooksville, FL (352) 797-7075 |
| High School: | Hernando High School (9th– 12th)<br>111 Ernie Chatman Run, Brooksville, FL (352) 797-7015 |

## 3. REAL ESTATE TAXES

| | |
|---|---|
| Appraisal District: | Hernando County |
| Contact Information: | (352) 754-4180 |
| **2023** Taxing Authorities and Rates: | |

| | |
|---|---|
| Hernando County BCC General | 6.6997 |
| BCC Transportation | 0.8091 |
| BCC County Health | 0.1102 |
| Hernando County School Board | 3.0920 |
| BPI Discretionary | 0.7480 |
| BPI Capital Outlay | 1.5000 |
| BPI Operational Voted | 1.0000 |
| Emergency Medical Services | 0.9100 |
| Stormwater Mgmt Program | 0.1139 |
| SW FL Water Management Dist | 0.2043 |
| **Total 2023 Millage Rate:** | **15.1872** |

| | |
|---|---|
| HC Fire/Rescue District | $320.72 |
| Solid Waste Disposal MSBU | $ 94.91 |
| **Non-Ad Valorem Assessments** | **$415.63** |

## 4. WATER AND SEWER

| | |
|---|---|
| Provider: | Hernando County Utilities District (HCUD) |
| Contact Information: | (352) 754-4037 |
| Monthly Water Rates: | Base Charge: $8.09<br>Rate Order: 0 -5,000 gallons: $1.42 per 1,000 gallons<br>5,001 - 10,000 gallons: $1.67 per 1,000 gallons<br>10,001 - 20,000 gallons: $2.51 per 1,000 gallons |
| Estimated Monthly Cost: | $23.54 |
| Monthly Sewer Rates: | Base Charge: $21.06<br>Rate Order: 0 -10,000 gallons: $4.69 per 1,000 gallons |
| Estimated Monthly Cost: | $67.96 |

## 5. ELECTRITY

| | |
|---|---|
| Provider: | Withlacoochee River Electric Cooperative |
| Contact Information: | (352) 588-5115 |

## 6. TELEPHONE / INTERNET / TV

| | |
|---|---|
| Provider: | AT&T |
| Contact Information: | (844) 723-0252 |
| Estimated Monthly Rates: | Plans starting at $59.99 per month |

## 7. DISPOSAL

| | |
|---|---|
| Provider: | Republic Services |
| Contact Information: | (352) 540-6457 |
| Estimated Monthly Rates: | $5.78 billed on taxes, trash & recycle bin included |

**The preceding information has been prepared with reasonable diligence by the Seller based on information available February 19, 2024, and is subject to change.**