UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARA CONNELLY and RICHARD BRYAN WILSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

CASE NO.: 5:26-cv-00539-JSS-PRL

vs.

LGI HOMES, INC., LOANDEPOT, INC., and LGI MORTGAGE SOLUTIONS, LLC,

Defendants.
_______________________________________/

**DEFENDANT LGI HOMES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant, LGI Homes, Inc. ("LGI Homes"), hereby moves this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA") for an order compelling Plaintiffs Mara Connelly ("Connelly") and Richard Wilson ("Wilson") to arbitrate their claims asserted against LGI Homes in the present case pursuant to a valid arbitration agreement between the parties and staying the action pending the resolution of such arbitration. Pursuant to this Court's Order entered October 13, 2026, LGI Homes preserves, and does not waive, any and all potential Rule 12(b) motions until the Court has ruled upon this motion to compel arbitration. *See* Dkt. 43.

## I. Purchase Agreement is Central to All Claims Against LGI Homes

The allegations in the Amended Complaint asserted by each Plaintiff arise out of each Plaintiff's purchase of a home in Florida from LGI Homes. *See* Am. Compl.

(Dkt. 44), ¶¶ 1, 6, 13, 16, 121. The gravamen of Plaintiffs' allegations is that each Plaintiff believes the marketing materials and information provided by LGI Homes were different from the final details concerning monthly payments and expenses associated with the purchase of the home. *See, e.g., id.* at ¶¶ 1, 7, 13, 48, 121, 145-46. Plaintiffs admit they each signed home purchase agreements with LGI Homes governing the purchase of their homes. *See id.* at ¶¶ 16, 63, 121-22, 125, 141, 154. Plaintiffs acknowledge that the purchase agreements contain an arbitration provision. *Id.* at ¶ 125.

The Wilson and Connelly Purchase Agreements are attached hereto as **Exhibits** **1** (Wilson) and **3** (Connelly). *See* Declaration of Destiny D'Errico ("LGI Decl.") ¶¶ 3-4 & Exs. 1, 3 thereto. Although Plaintiffs did not attach the Purchase Agreements to the Amended Complaint, they are central to each Plaintiff's claims and are appropriately considered by this Court on a motion to compel arbitration. *See Orellana v. Roblox Corp.*, 769 F.Supp.3d 1273, 1282-86 (M.D. Fla. 2025) (Sneed, J.) (applying summary judgment standard to motion to compel arbitration and considering arbitration provisions in online User Agreements presented by defendants but not attached to complaint); *accord Day v. Tay*lor, 400 F.3d 1272, 1276 (11th Cir. 2005) (court may consider contract attached to motion to dismiss); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298-99 (11th Cir. 2024). The first statement in the Purchase Agreement alerts the buyer that all disputes will be decided by alternative dispute resolution:

LGI HOMES

LGI HOMES - FLORIDA, LLC

PURCHASE AGREEMENT for TRILBY CROSSING

THIS DOCUMENT CREATES IMPORTANT LEGAL OBLIGATIONS THAT YOU SHOULD UNDERSTAND PRIOR TO SIGNING, INCLUDING A REQUIREMENT THAT ANY DISPUTES BE DECIDED BY ALTERNATIVE DISPUTE RESOLUTION. YOU SHOULD READ IT THOROUGHLY AND IF YOU ARE UNCERTAIN OR HAVE QUESTIONS ABOUT YOUR RIGHTS, OBLIGATIONS OR RESPONSIBILITIES UNDER THIS AGREEMENT, CONSULT AN ATTORNEY.

The alternative dispute resolution provision is detailed, is nearly identical as to each Plaintiff, and provides in pertinent part:

> **21. DISPUTE RESOLUTION - NON-BINDING MEDIATION AND BINDING ARBITRATION**
>
> **Any and all claims, disputes and controversies by or between Buyer and Seller, whether in contract, equity or tort, arising out of, or in any way related to the purchase of the Property, the construction related to the Property, or otherwise related to Buyer's dealings or relationships with Seller (a *"Dispute")* shall be resolved solely by the dispute resolution process identified in this Section. Buyer acknowledges that agreeing[1] to this dispute resolution process means Buyer is waiving the right to trial by judge and/or jury.**
>
> **Any proceeding involving a Dispute will be brought, conducted, and decided only in the county and state where the Property is located.**

LGI Decl. Exs. 1 & 3 at § 21 (bolding, italics and enlarged font in original). The arbitration provision is stated in § 21(C), with slight differences between the two documents in the first paragraph. The Wilson provision provides:

> **C. Arbitration. Binding arbitration shall be conducted by the AAA or DeMars & Associates, Ltd. ("DeMars") pursuant to applicable rules except as modified herein. The choice of arbitration service shall be made by Seller after its receipt of written notice of a Dispute. All administrative fees of the arbitration service and arbitrator's fees shall be shared equally by Buyer and Seller. All attorney's fees and expenses, and consultant and expert fees and expenses shall be paid by the incurring party. Except as otherwise specifically provided herein the arbitrator shall have no authority to award fees or costs of one party to the other, including administrative fees of the arbitration service, arbitrator's fees, attorney's fees and expenses, and consultant and expert fees and expenses. ...**

[1] The Connelly provision states: "...acknowledges and agrees that ...". *See* LGI Decl. Ex. 3 at § 21.

LGI Decl. Ex. 1 at § 21(C). The Connelly provision provides:

> **C. Arbitration. Binding arbitration shall be conducted by the AAA, Judicial Arbitration & Mediation Services ("JAMS") or DeMars & Associates, Ltd. ("DeMars") pursuant to applicable rules except as modified herein. The choice of arbitration service shall be made by Seller after its receipt of written notice of a Dispute. All administrative fees of the arbitration service and arbitrator's fees shall be shared equally by Buyer and Seller. All attorney's fees and expenses, and consultant and expert fees and expenses shall be paid by the incurring party. The arbitrator must follow the applicable State's substantive law, except to the extent explicitly modified herein. Notwithstanding the preceding sentence, and except as otherwise specifically provided herein with regards to actions to compel mediation or arbitration, the arbitrator shall have no authority to, and shall not, award fees or costs of one party to the other, including administrative fees of the arbitration service, arbitrator's fees, attorney's fees and expenses, and consultant and expert fees and expenses. Both Buyer and Seller waive any right to recover any such fees or expenses from the other in any legal proceeding even if otherwise allowed by statute, CC&Rs, or otherwise. …**

LGI Decl. Ex. 3 at § 21(C). The remaining text is the same for both Wilson and Connelly:

> **Notwithstanding any other provision herein, if either Buyer or Seller brings any successful court action to compel … arbitration under this Agreement, then the party compelling … arbitration shall be entitled to recover from the other party its reasonable attorney's fees and costs incurred in that court action. …**
>
> **The parties agree that this Agreement and this arbitration provision involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule. <u>Any and all issues relating to the arbitrability of the Dispute shall be decided by the arbitrator</u>.**
>
> **Buyer waives the right to institute or participate in a class action arbitration or litigation for any Dispute or other matter covered by this Agreement. Buyer shall not consolidate or join any Dispute covered by this Agreement with any dispute or claim of any other current or former owner of property in the subdivision in arbitration, litigation, or other proceeding. The arbitration shall solely include and involve Buyer and Seller to this Agreement …. Buyer and Seller hereby agree and acknowledge that this arbitration provision is intended to benefit and be binding on any occupant or subsequent purchaser of the Property.**

> **… The arbitrator is required to apply the applicable state's law and shall have no authority to award any damage to a party unless such damages are specifically provided for by state or Federal law.**
>
> **…**
>
> **Buyer and Seller agree that notwithstanding anything to the contrary, the rights and obligations set forth in this dispute resolution provision shall survive (1) the termination of this Agreement by either party; (2) the default of this Agreement by either party; or (3) any Closing and delivery of deed. The waiver or invalidity of any portion of this dispute resolution provision shall not affect the validity or enforceability of the remaining portions of this dispute resolution provision and/or the Agreement. Buyer and Seller further agree (1) that any dispute involving Seller's directors, officers, partners, employees, affiliates and agents shall be resolved as set forth herein and not in a court of law or equity; and (2) that Seller shall have the option to include its subcontractors, suppliers, and vendors as parties in the alternative dispute resolution procedures set forth in this Agreement. Buyer's acceptance of these dispute resolution procedures is a material part of Seller's decision to sell the Property to Buyer at the Purchase Agreement.**

LGI Decl. Exs. 1 & 3 at § 21(C) (underlining added for emphasis).

The Amended Complaint is replete with conclusory allegations derived from a hit piece article by Hunterbrook Media disguised as journalism and designed to solicit disgruntled homebuyers to initiate or participate in litigation against LGI, rather than actual facts personally known by either of the named Plaintiffs. *See, e.g.*, Am. Compl. ¶¶ 2-3, 42, 50-53, 55-57, 61-62, 100, 103, 105. This type of digital astroturfing is becoming an increasingly prevalent tactic by entities like Hunterbrook Media and its affiliates, Hunterbrook Equity and Hunterbrook Law. *See* Bárbara de Rosa Lazarotto, *The Grass is not Always Greener on the other Side: The Use of Digital Astroturfing to Spread Disinformation and the Erosion of the Rule of Law*, 3 LSU Law J. Soc. Just. & Pol'y, 113 (2023) available at: https://digitalcommons.law.lsu.edu/jsjp/vol3/iss1/9/.

The Amended Complaint asserts four causes of action: (1) Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") violation by both Plaintiffs against all Defendants; (2) Fraud by both Plaintiffs against all Defendants; (3) Negligent Misrepresentation by both Plaintiffs against all Defendants; and (4) Violation of the Truth in Lending Act ("TILA") by both Plaintiffs against LGI Homes. Because each of Plaintiffs' claims arise out of his/her purchase agreements and dealings with LGI Homes, the claims must be arbitrated pursuant to the clear terms of the arbitration clause in the Purchase Agreements. Accordingly, LGI Homes requests the Court enter an order compelling arbitration and staying the proceedings.

## II. Legal Standard

The Federal Arbitration Act ("FAA") "reflects a 'liberal federal policy favoring arbitration.'" *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1231 (11th Cir. 2012) (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (additional citations omitted)). "Section 2 of the FAA requires the courts to enforce an arbitration provision within a contract unless 'such grounds exist at law or in equity for the revocation of any contract.'" *Parnell*, 804 F.3d at 1146 (quoting 9 U.S.C. § 2); *Pendergrast*, 691 F.3d at 1231 n.7.

The FAA expressly provides that a party seeking to compel arbitration may seek to "stay ... the action until such arbitration has been had in accordance with the terms

of the agreement," and requires that, if the Court determines arbitration is appropriate, it "shall" stay the action as requested. 9 U.S.C. § 3. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

## III. Plaintiffs' Claims Against LGI Homes Are Subject to Arbitration

The FAA states that a clause in any contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" will be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. "When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration." *Parnell*, 804 F.3d at 1147 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, (1995)); *see also Orellana*, 769 F.Supp.3d at 1280-81. The Purchase Agreements are "governed by the laws of the State of Florida," and the arbitration provisions are governed by the FAA. Exs. 1 & 3, at § 21(C), § 27.

### A. A Valid Arbitration Agreement Exists

Under Florida law, the elements of a valid contract are: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)); *Orellana*, 769 F.Supp.3d at 1281 (citing same). Both Connelly and Wilson entered into a Purchase Agreement, as acknowledged in the Amended

Complaint. *See* Am. Compl. ¶¶ 16, 63, 121-22, 125, 141, 154. Each Purchase Agreement includes all the requisites of a valid contract and is signed by each respective Plaintiff. *See* LGI Decl. ¶¶ 3-4 & Exs. 1, 3. Because the Purchase Agreements established and facilitated the closing of each Plaintiff's home purchase, and since Plaintiffs' entire action concerns their dissatisfaction with costs and payments incurred following the purchase of their homes, there can be no dispute that the Purchase Agreements were indeed entered into and facilitated Plaintiffs' purchases of their homes.

Plaintiffs acknowledge that the Purchase Agreements contain an arbitration provision. *Id.* at ¶ 125. Plaintiffs' contention in paragraphs 126-129 of the Amended Complaint that the arbitration provisions are not enforceable largely conflates their claims against the mortgage lender with their claims against LGI Homes. LGI Homes and the lenders are separate entities and, according to the allegations in the Amended Complaint, Plaintiffs entered into independent written agreements with the separate entities.

**B. <u>The Arbitration Provision Contains a Delegation Provision</u>**

"'[W]here an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision.' ... 'Absent such a challenge,' courts must 'treat a delegation provision as valid and permit the parties to proceed to arbitration.'" *Orellana*, 769 F.Supp.3d at 1288 (quoting *Parnell*, 804 F.3d at 1144). "When the parties' contract

delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1266 (2022) (discussing and following *Henry Shein*).

The arbitration provision in each Purchase Agreement includes such a delegation provision: "**Any and all issues relating to the arbitrability of the Dispute shall be decided by the arbitrator.**" Exs. 1 & 3 at § 21(C) (bolded in original). Because the arbitration provision in each Purchase Agreement requires arbitration of any and all disputes arising from or relating to the interaction between each Plaintiff and LGI Homes, the delegation provision "clearly and unmistakably evince the parties' intent to arbitrate all gateway issues" including Plaintiffs' enforceability and scope arguments. *Orellana*, 769 F.Supp.3d at 1290 (citing *Attix*, 35 F. 4th at 1297).

### C. Plaintiffs' Claims Must be Arbitrated[2]

Contrary to Plaintiffs' attempt to disassociate their claims against LGI Homes away from the contract (Am Compl. ¶ 131), each of the causes of action against LGI Homes must be arbitrated because they arise out of and relate solely to Plaintiffs' purchase of their homes or Plaintiff's dealings with LGI Homes. *See* Exs. 1 & 3 at § 21 ("**Any and all** claims, disputes and controversies by or between Buyer and Seller, whether in contract, equity or tort, arising out of, or **in any way related to the purchase**

[2] Because of the delegation clause, the determination of what claims are or are not subject to arbitration should be left to the arbitrator. This argument is provided in the event that the Court believes this analysis must be conducted by the Court in the first instance.

**of the Property**, ... or **otherwise related to Buyer's dealings or relationships with Seller** (a "*Dispute*") shall be resolved solely by the dispute resolution process." (underlined emphasis supplied)). Under Florida law, this type of arbitration clause is deemed to be broad in scope and reaches any and all claims relating to the parties and is fully enforceable. *See Jackson v. Shakespeare Found., Inc.*, 108 So.3d 587, 593 (Fla. 2013) (citing *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 637-38 (Fla. 1999)); *see also Kaiser v. Alexander Marine USA*, No. 6:23-cv-108-RBD-RMN, 2023 WL 6494779, at *3 (M.D. Fla. Aug. 18. 2023) (citing *Seifert* and *Jackson* and holding scope of provision broad).

Each Plaintiff's purchase of his/her home was a transaction. Plaintiff Wilson signed his Purchase Agreement on November 17, 2023, and completed his home purchase, signing the closing documents, on December 11, 2023. *See* LGI Decl. ¶ 3 & Exs. 1-2. Plaintiff Connelly signed her Purchase Agreement on July 14, 2024, and completed her home purchase, signing the closing documents, on September 16, 2024. *See* LGI Decl. ¶ 4 & Exs. 3-4.

Plaintiffs' claims center around their complaints that they entered into the purchase agreements and ultimately purchased their homes in reliance upon alleged misrepresentations in the marketing and sales process by LGI Homes. *See* Am. Compl. ¶¶ 185-190. Specifically, the FDUTPA claim is based on allegations that "Defendants" engaged in "high-pressure sales tactics, ... and misrepresented the true monthly cost of homeownership" which induced Plaintiffs to proceed with purchase; the fraud claim is based on Plaintiffs being induced to enter into purchase based on alleged

misrepresentations in advertisements regarding "cost of home"; the misrepresentation claim is based on representation of price and Plaintiffs' reliance thereon, and the TILA claim relies upon the same allegations as the three preceding claims. *See id.* ¶¶ 187, 193, 197, 200, 204, 208. Thus, similar to the plaintiff's claims in *Kaiser*, each of these claims is "based on allegations that [plaintiff] relied on misrepresentations in executing the purchase agreement." *Kaiser*, 2023 WL 6494779, at *3 (holding plaintiff's negligent misrepresentation, fraudulent inducement, and FDUPTA claims all within the scope of the arbitration clause); *see also Jackson*, 108 So.3d at 594 (holding plaintiff's fraud claim within the scope of arbitration clause because it was "inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself").

Furthermore, there is no impediment to enforcing arbitration provisions when the plaintiffs assert FDUTPA, fraud, or misrepresentation claims. *See Pendergast*, 691 F.3d at 1231-36 (discussing *Concepcion*, 563 U.S. 333 (2011), and *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011) at length and holding Pendergast's FDUTPA and misrepresentation claims must be arbitrated and class action waiver enforced pursuant to the plain language of the governing agreement); *Kaiser*, 2023 WL 6494779, at *3 (ordering negligent misrepresentation, fraudulent inducement, and FDUPTA claims to arbitration); *Mutschler v. Used Auto Outlet Inc.*, No. 8:25-cv-2243-SDM-SPF, 2025 WL 4087704, at *6 (M.D. Fla. Jan.7, 2025) (finding plaintiff's claims, including fraud, FDUTPA, TILA, to be within the scope of the arbitration provision), *adopted* 2026 WL 228010 (M.D. Fla. Jan. 28, 2026).

### D. <u>The TILA Claim Cannot Be Used to Avoid Arbitration</u>

Moreover, Plaintiffs cannot circumvent the arbitration provision found within their Purchase Agreements by asserting a TILA claim against LGI Homes. As relevant here, TILA provides: "No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(1); 12 C.F.R. § 1026.36(h)(1). By its plain text, TILA precludes arbitration only as to disputes arising out of a residential mortgage loan or open-end consumer credit transaction. TILA does not extend to purchase agreements between a homebuilder and homebuyer. *See CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1208–11 (D.N.M. 2020) ("[TILA] only prohibits arbitration provisions in residential mortgage loans."). And Plaintiffs acknowledge that they obtained their mortgage loans from loanDepot, not LGI Homes. *See* Am. Compl. ¶¶ 141–45, 154–56; *see id.* ¶¶ 111–12, 119 (alleging that only loanDepot provided mortgage financing).

Additionally, because of the delegation clause, the determination of whether the TILA claim is subject to arbitration should be left to the arbitrator. Thus, even the question of whether the arbitration provision is unenforceable under TILA must itself be decided by the arbitrator, not the Court. *See Sitzman v. EK Real Est. Servs. of NY LLC*, No. 21-2666, 2022 WL 17853214, at *7–8 (N.D. Tex. Dec. 21, 2022); *Baskin v. EK Real Est. Servs., NY, LLC*, No. 421-727, 2022 WL 17742738, at *7 (E.D. Tex. Sep. 14, 2022).

### i. LGI Homes is Not a Mortgage Originator

Separate and apart from the delegation clause, TILA does not apply because LGI Homes is neither a "creditor" nor a "mortgage originator" subject to the statute. Both Plaintiffs acknowledge in the Amended Complaint that loanDepot, not LGI Homes, took their mortgage loan applications. Am. Compl. ¶¶ 123–24, 141–45, 154–56. Nowhere does the Amended Complaint allege, beyond conclusory assertions, that LGI Homes ever extended credit or that any financial obligation was initially payable to LGI Homes. Thus, the Amended Complaint does not plausibly allege that LGI Homes was a "creditor" subject to TILA. *See* 15 U.S.C. § 1602(g) (defining "creditor" as a person who both: (1) regularly extends certain consumer credit; and (2) is the person to whom the resulting debt is initially payable).

Plaintiffs also fail to plausibly allege that LGI Homes—as a homebuilder that does not offer financing—employed salespeople who performed mortgage originator activities, let alone mortgage originator activities for compensation.[3] Despite the sweeping nature of the general allegations, the Amended Complaint does not allege that LGI Homes was involved in either of the named Plaintiffs' mortgage origination processes. And because TILA's anti-steering provisions apply only to mortgage originators, Plaintiffs similarly fail to plausibly allege that LGI Homes salespeople

[3] TILA defines a "mortgage originator" as "any person who, for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain—(i) takes a residential mortgage loan application; (ii) assists a consumer in obtaining or applying to obtain a residential mortgage loan; or (iii) offers or negotiates terms of a residential mortgage loan." 15 U.S.C. § 1602(dd)(2)(A).

illegally steered them to obtain specific loan products for compensation. Simply referring homebuyers to an affiliated mortgage company is not a TILA violation.

**ii. LGI Did Not Act for, or in the Expectation of, Compensation or Gain**

As a threshold matter, Plaintiffs fail to plausibly allege that LGI Homes engaged in activity requiring licensure "for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain." 15 U.S.C. § 1602(dd)(2)(A). Regulation Z defines "compensation" to include "salaries, commissions, and any financial or similar incentive." 12 C.F.R. § 1026.36(a)(3). And as instructive here, Regulation H[4] provides that an individual acts "for compensation or gain" if such person "receives or expects to receive in connection with the individual's activities anything of value, including, but not limited to, payment of a salary, bonus, or commission." App'x A to 12 C.F.R. Part 1008, § (c)(1). The Amended Complaint conclusorily alleges that LGI Homes acted as a mortgage originator and, for direct or indirect compensation or gain, "assisted Plaintiffs and Class Members in obtaining and applying to obtain residential mortgage loans and offered or negotiated the terms of those loans." Am. Compl. ¶ 208. Plaintiffs, however, provide no explanation of their basis for believing that LGI Homes and its salespeople allegedly received any of the forms of compensation listed above in exchange for placement of Plaintiffs' loans. Nor do Plaintiffs otherwise provide any support for this conclusory allegation.

---

[4] Regulation H, in relevant part, implements the Secure and Fair Enforcement of Mortgage Licensing ("SAFE") Act, which sets minimum standards for mortgage originator licensing schemes. Plaintiffs rest their unlicensed mortgage originator activity claim on section 1639b(b)(1), which explicitly refers to the SAFE Act. *See* Am. Compl. ¶ 74 (referencing SAFE Act's licensing requirements). Thus, SAFE Act definitions are instructive as to who constitutes a "mortgage originator" under TILA.

Additionally, the allegation that LGI Homes is illegally compensated for referrals to LGI Mortgage through the revenues that it earns as a partner in this joint venture with loanDepot, *id.* ¶ 210, is legally untenable. The Official Commentary to Regulation Z plainly states that, for the purposes of TILA, compensation does not include bona fide returns or dividends paid on stock or other equity holdings. 12 C.F.R. Pt. 1026, Supp. I, Part 3; *see* 12 U.S.C. §§ 2602(7), 2607(c)(4) (permitting referral of business to an affiliate).

**iii. <u>LGI Homes Did Not Take Mortgage Loan Applications</u>**

Both named Plaintiffs acknowledge that loanDepot—rather than LGI Homes —took their mortgage loan applications. Am. Compl. ¶¶ 123-24, 143–44, 155–56. And Plaintiffs explicitly allege that they obtained their mortgages from loanDepot, not LGI Homes. *Id.*

Plaintiffs try to circumvent the applicable legal definition under their general theory that LGI Homes collected residential mortgage loan application information because its salespeople "collected and recorded prospective Homebuyers' loan application information, including income, assets, and other financial information, on a 'pre-qualification form'" and obtained homebuyers' credit reports. *Id.* ¶ 208(a). This theory is unsupported by Plaintiffs' own allegations and misinterprets TILA.

The Amended Complaint does not allege that any LGI Homes salesperson took the requisite mortgage loan application information from either named Plaintiff. Instead, each Plaintiff alleges that LGI Homes referred them to loanDepot and that each Plaintiff worked with loanDepot to obtain their mortgages. *See id.* ¶¶ 141–45,

154–56. And obtaining a credit report is not a violation of TILA. *See In re Cap. One Bank Credit Card Int. Rate Litig.*, 51 F. Supp. 3d 1316, 1348 (N.D. Ga. 2014), as corrected (Nov. 3, 2014), *aff'd sub nom. Barker v. Cap. One Bank (USA), N.A.*, 622 F. App'x 894 (11th Cir. 2015) (explaining that "[TILA] is a disclosure statute and does not substantively regulate consumer credit [including credit reporting]" (quotations omitted)).

Even the Amended Complaint's general and conclusory allegations are legally flawed. TILA defines a "mortgage originator" as any person who, in relevant part, "takes a residential mortgage loan application." 15 U.S.C. § 1602(dd)(2)(A)(i). But Regulation H provides that, to constitute a mortgage originator, the person must take the "application *for the purpose of facilitating a decision* whether to extend an offer of residential mortgage loan terms to a borrower." 12 C.F.R. § 1008.103(c)(1) (emphasis added). Here, the Amended Complaint does not allege that LGI Homes took an application for the purpose of deciding whether to extend mortgage loans to Plaintiffs. To the contrary, the Amended Complaint specifically alleges that it was loanDepot that made the decision to extend mortgage loans to Plaintiffs. *Cf. Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1204–05 (N.D. Ala. 2017) ("Defendant cannot be considered a creditor under TILA because it was Countrywide Home Loans, Inc., and not Defendant, to whom the debt arising from the consumer credit transaction [was] initially payable on the face of the ... indebtedness." (Alteration in original) (quotations omitted).).

Regardless, the Amended Complaint does not plausibly allege that the "pre-qualification form" allegedly used by LGI Homes included all the information legally necessary to constitute a residential mortgage loan application within the meaning of TILA. Regulation Z defines a "residential mortgage loan application" as consisting of "the submission of the consumer's name, the consumer's income, the consumer's social security number to obtain a credit report, the property address, an estimate of the value of the property, and the mortgage loan amount sought." 12 C.F.R. § 1026.2(a)(3)(ii).

Of these six required elements, the alleged pre-qualification form, Am. Compl. ¶ 72, appears to have requested only three: the consumer's name, income, and social security number. This pre-qualification form did not request the property's address (distinct from the homebuyer's current address), the property's estimated value, or the loan amount sought.

**iv. <u>LGI Homes Did Not Improperly Assist Plaintiffs in Obtaining, or Applying to Obtain, Mortgage Loans</u>**

As previously explained, both named Plaintiffs acknowledge that they worked with loanDepot to apply for and obtain their mortgages. And there is no prohibition on a homebuilder referring homebuyers to an affiliated mortgage company without receiving compensation specifically for such referral. *See Yeatman v. D.R. Horton, Inc.*, No. 407CV081, 2008 WL 1847087, at *2 (S.D. Ga. Apr. 23, 2008), *aff'd*, 577 F.3d 1329 (11th Cir. 2009) (explaining that a homebuilder may refer a homebuyer to an affiliated mortgage company and may provide incentives in exchange for using such mortgage

company). To the contrary, federal law explicitly permits a homebuilder to refer a homebuyer to an affiliated mortgage company. *See Spicer v. Ryland Grp., Inc.*, 523 F. Supp. 2d 1356, 1361 (N.D. Ga. 2007), *aff'd* 294 F. App'x 434 (11th Cir. 2008); 12 U.S.C. § 2607(c)(4).

Further, Plaintiffs do not allege the same facts that the only court apparently to address these circumstances has determined are necessary to plausibly qualify a homebuilder's employees as mortgage originators under TILA. In *Brooks v. BC Custom Construction, Inc.*, the court concluded that the plaintiffs had plausibly alleged that a homebuilder constituted a "mortgage originator" under TILA. No. 18-00717, 2019 WL 3763769, at *4, *8 (D. Or. May 21, 2019), *report and recommendation adopted*, 2019 WL 3502907 (D. Or. Aug. 1, 2019). The court so concluded based on the plaintiffs' allegations that the homebuilder "arranged private financing from [the l]ender and asked plaintiffs to provide [the l]ender with a copy of the purchase and sale agreement, their [prior b]ank loan application[,] and tax returns, as well as a $100,000 cash deposit and a non-refundable $10,000 deposit." *Id.* at *7 (internal citations omitted).

Here, however, the Amended Complaint does not plead that LGI Homes engaged in the same specific conduct as the homebuilder in *Brooks* did to facilitate the lender's taking of a residential mortgage loan application. Notably, the plaintiffs in *Brooks* alleged that the homebuilder "indicated that it would arrange to obtain a loan from a private lender at a cost of 1 to 1.5 percentage fee 'points' with a loan interest rate of 10%." *Id.* at *1. And "[w]hen [the] plaintiffs questioned why [the Holt Group (whose role was then apparently unclear)] needed to see their tax returns, [the

homebuilder] responded that the lender want[ed] to see [their] tax returns for the previous two years to ensure [that they] have loan qualifications." *Id.* (quotations omitted).

Unlike the allegations of the homebuilder's involvement in the mortgage loan application process in *Brooks*, Plaintiffs make no allegation that LGI Homes was involved in their mortgage loan application processes. By their own allegations, Plaintiffs knew that LGI Homes was the homebuilder and that loanDepot was the mortgage lender. Plaintiffs applied for their mortgage with loanDepot, not LGI Homes, and received their mortgage-related disclosures from loanDepot, not LGI Homes.

**v. <u>LGI Homes Did Not Negotiate Terms of a Mortgage Loan</u>**

Plaintiffs also fail to plausibly allege that LGI Homes "offer[ed] or negotiate[d] terms of a residential mortgage loan." 15 U.S.C. § 1602(dd)(2)(A)(iii). As relevant here, Regulation Z excludes from the "loan originator" definition any "person who does not take a consumer credit application or offer or negotiate credit terms available from a creditor." 12 C.F.R. § 1026.36(a)(1)(i)(A). Regulation Z also defines "credit terms" to "include[] rates, fees, and other costs" and provides that they "are selected based on the consumer's financial characteristics when those terms are selected based on any factors that may influence a credit decision." *Id.* § 1026.36(a)(6).

Plaintiffs do not allege, beyond conclusory assertions, that LGI Homes offered or negotiated terms of a residential mortgage loan. *See* Am. Compl. ¶¶ 75-76, 133–59. This pleading deficiency becomes clear upon review of Plaintiffs' own factual

allegations. As to each named Plaintiff, they specifically allege that they worked with loanDepot to obtain their mortgage loans. *Id.* ¶¶ 143–44, 155–56. Aside from conclusory assertions, the Amended Complaint does not allege that LGI Homes salespeople engaged in anything more than generalized discussions untethered to the specific terms of any mortgage loan.

Tellingly, each Plaintiff explicitly alleges that, after signing their purchase agreement with LGI Homes, they were referred to and worked with loanDepot to apply for and obtain a mortgage loan. *Id.* Plaintiffs allege no involvement by LGI Homes in connection with their mortgage loan application process.

* * *

Accordingly, because of the delegation clause, the determination of whether the TILA claim is or is not subject to arbitration should be left to the arbitrator. However, if the Court believes this analysis must be conducted by the Court in the first instance, Plaintiffs' TILA claim is inapplicable and cannot preclude arbitration.

**E. <u>Provision is Not Unconscionable</u>**

Plaintiffs' conclusory allegation that the delegation provision within the arbitration provision is unconscionable is without merit. The burden is on the party resisting arbitration to prove unconscionability and that the claims at issue are unsuitable for arbitration. *Speidel v. Am. Honda Fin. Corp.*, No: 2:14-cv-19-FtM-38CM, 2014 WL 12873367, at *1 (M.D. Fla. April 21, 2014) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000) (additional citations omitted)); *Hobby Lobby Stores, Inc. v. Cole*, 287 So.3d 1272, 1275 (Fla. 5th DCA 2020). Under Florida law, "[a]

contract must be both procedurally and substantively unconscionable for a court to find it unenforceable." *Mutschler v. Used Auto Outlet Inc.*, No. 8:25-cv-2243-SDM-SPF, 2025 WL 4087704, at *4 (M.D. Fla. Jan. 7, 2025) (citing *Basulto v. Hialeah Auto.*, 141 So.3d 1145, 1158-59 (Fla. 1999); *Hobby Lobby*, 287 So.3d at 1275 (citing *Basulto*); *Golden v. Mobil Oil Corp.*, 882 F.2d 490 (11th Cir. 1989) (citing cases).

Procedural unconscionability is "the absence of meaningful choice when entering into the contract ...., which relates to the manner in which the contract was entered." *Basulto*, 141 So.3d at 1157. To determine whether an arbitration agreement is procedurally unconscionable under Florida law, courts consider: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Pendergast*, 592 F.3d at 1135 (citing *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999), and *Murphy v. Courtesy Ford, LLC*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006)). Substantive unconscionability focuses on the agreement itself and whether the terms are unreasonable. *Basulto*, 141 So.3d at 1157.

"Florida courts apply the doctrine of unconscionability 'with great caution' [and] have warned that the doctrine is not a mechanism that allows a party to 'avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous.''" *Lambert v. Signature Healthcare, LLC*, No.

19-11900, 2022 WL 2571959, at *4 (11th Cir. July 8, 2022) (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 284, 288 (Fla. 1st DCA 2003), and citing *Spring Lake NC, LLC v. Beloff*, 110 So.3d 52, 55 (Fla. 2d DCA 2013); *Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006)).

Plaintiffs' complaint that the delegation provision is "buried in adhesive form contracts" and presented to unsophisticated first-time homebuyers are the type of conclusory allegations that have been rejected by many courts. *See* Am. Compl. ¶ 130. "The fact that an arbitration agreement is presented on a take-it-or-leave-it basis (a contract of adhesion) is not dispositive." *Lambert*, 2022 WL 2571959, at *5 (citing *Hobby Lobby*, 287 So.3d at 1275); *Reimer v. AT&T Mobility, LLC*, No: 6:24-cv-1883-WWB-LHP, 2025 WL 4738543, at *7 (M.D. Fla. June 12, 2025) (holding arbitration provision not unconscionable, citing *Lambert*, 2022 WL 2571959, at *5 and other cases); *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So.2d 34, 40 (Fla. 4th DCA 2005) (enforcing arbitration provision and holding contract neither procedurally or substantively unconscionable). Plaintiffs have not alleged that they were unable to read the document, or that they asked questions about the arbitration provision and were not answered, nor have Plaintiffs alleged that they were forced to purchase a home from LGI Homes. While LGI Homes provides high quality, desirable homes, the reality is that there are many homes available for purchase in Florida; Plaintiffs *chose* to purchase homes from LGI Homes. *See VoiceStream Wireless Corp.*, 912 So.2d at 40 (explaining that even if a plaintiff cannot obtain the exact same product from another

seller, the fact that available choices exist negate a finding of procedural unconscionability). As the district court in *Mutschler* explained:

> Plaintiff suggests she could not negotiate the Contract's terms and had no choice but to accept the Contract and be bound by it or forego her purchase of the BMW. However, nothing supports this. The Contract is well organized with clearly labeled sections and subsections for different topics. Plaintiff offers no evidence that she struggled to understand what she signed. And she could have walked away from the deal and attempted to purchase a car from a dealer that did not require its customers to submit claims to arbitration. In other words, there is no evidence that Plaintiff lacked a meaningful choice; the Court declines to find procedural unconscionability.

*Mutschler*, 2025 WL 4087704, at *4.

The Purchase Agreements expressly and repeatedly advised Plaintiffs—in enlarged, bolded font—that the alternative dispute resolution provision was an essential part of the contract to purchase from LGI Homes. This is stated at the top of the first page, at § 21 (quoted *supra* at pp. 2-3), and again at the end at § 29 ("BUYER REPRESENTS THAT BUYER HAS READ AND UNDERSTANDS THIS AGREEMENT, INCLUDING THE AGREEMENT FOR ALTERNATIVE DISPUTE RESOLUTION… BUYER ACKNOWLEDGES THAT SELLER IS RELYING ON THESE REPRESENTATIONS AND WOULD NOT ENTER INTO THIS AGREEMENT WITHOUT THIS UNDERSTANDING.") *See* LGI Decl. Exs. 1 & 3. Plaintiffs are unable to show that the arbitration provisions are procedurally or substantively unconscionable.

### F. <u>Case Should be Stayed</u>

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *Orellana*, 769 F.Supp.3d at

1290. This Court explained in *Orellana* that when a case involves "'both arbitrable and nonarbitrable claims ... courts have discretion to stay nonarbitrable claims [and '[c]rucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.'" *Orellana*, 769 F.Supp.3d at 1290 (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004)). Plaintiffs' claims against LGI Homes must be arbitrated. However, even if only certain claims are arbitrated, then the remainder should be stayed because they rely largely upon the same factual allegations as the other claims being submitted to arbitration. *See Orellana,* 769 F.Supp.3d at 1290-91. Thus, all proceedings with respect to LGI Homes should be stayed until the completion of arbitration.

## CONCLUSION

For these reasons, LGI Homes requests that the Court enter an order compelling arbitration as to all claims asserted against LGI Homes and staying the proceedings.

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that counsel for Defendant, LGI Homes, conferred with counsel for Plaintiffs via teleconference on September 18 and October 6, 2026 and numerous times via email, and Plaintiffs oppose the relief request herein.

Dated: November 4, 2026

Respectfully submitted,

/s/ ***Kelly Garcia***
T. Todd Pittenger – Lead Counsel
Florida Bar No. 768936
todd.pittenger@gray-robinson.com

Kelly J. H. Garcia
Florida Bar No.: 0694851
kelly.garcia@gray-robinson.com
**GRAYROBINSON, P.A.**
301 East Pine Street, Suite 1400
Orlando, Florida 32801
Telephone: 407/843-8880

Mitchel H. Kider, *pro hac vice*
kider@thewbkfirm.com
Timothy Ofak, *pro hac vice*
ofak@thewbkfirm.com
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel: (202) 628-2000
Fax: (202) 628-2011

*Counsel for Defendant, LGI Homes, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 4, 2026, the foregoing document was filed with the Clerk of the Court using CM/ECF, which shall serve copies on all attorneys of record.

*/s/ Kelly Garcia*
KELLY GARCIA
*Counsel for Defendant, LGI Homes, Inc.*